## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

MURRAY WALTER PISONY,

      *Plaintiff/Counterclaim*
      *Defendant,*

v.

JAMES A. MCLEOD D/B/A
COMMANDO CONSTRUCTION and
COMMANDO CONSTRUCTION, INC.

      *Defendants/Counterclaim*
      *Plaintiff.*

Case No.: 6:17-cv-00055 RP-JCM

JURY DEMAND

## DEFENDANT JAMES A. MCLEOD'S MOTION AND MEMORANDUM TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) AND FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.          INTRODUCTION ........................................................................................ 1

II.         FACTUAL BACKGROUND.................................................................... 2

III.        ARGUMENT ............................................................................................ 6

    A.      The First Amended Complaint Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim against McLeod.............................................. 6

        1.      Legal Standard ................................................................... 6

        2.      Pisony Has Not Alleged Any Facts to Pierce the Corporate Veil to Impose Personal Liability on McLeod........................................ 7

        3.      Pisony's Complaint Also Fails to Satisfy the Requirements of Rule 8(a)(2) Because it Constitutes an Impermissible "Group Pleading" ........ 12

    B.      The First Amended Complaint Should be Dismissed under Rule 12(b)(2) for Lack of Personal Jurisdiction Over McLeod ........................................ 14

IV.        CONCLUSION................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page**

*801962 Ont. Inc. v. MacKenzie Trust Co.*,
[1994] O.J. No. 2105 (Gen. Div.) ........................................................................... 9

*Amoco Chemical Co. v. Tex Tin Corp.*,
925 F. Supp. 1192 (S.D. Tex. 1996) ...................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................... 7, 11, 12

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) ........................................................................... 14

*Automated Transaction LLC v. New York Community Bank*,
No. 12-CV-3070 (ARL), 2013 WL 992423 (E.D.N.Y. Mar 13, 2013) ................................... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................. 7, 12

*Broadway National Bank v. Plano Encryption Techs., LLC*,
173 F. Supp. 3d 469 (W.D. Tex. 2016) ................................................................... 15

*Canada Life Assurance Co. v. C.I.B.C.*,
(1974), 3 O.R. (2d) 70 (C.A.) ........................................................................... 9

*Castleberry v. Branscum*,
721 S.W.2d 270 (Tex. 1986)........................................................................... 10

*Davaco, Inc. v. AZ3, Inc.*,
Civil Action No. 3:07-cv-803, 2008 WL 2243382 (N.D. Tex. May 30, 2008) ......................... 8

*Direct Energy Marketing Ltd. v. Duke/Louis Dreyfus LLC*,
No. 399CV1942(WWE), 2001 WL 789345 (D. Conn. June 13, 2001)................................... 8

*Hanson v. Denckla*,
357 U.S. 235, 78 S.Ct. 1228, 2 L.E.2d 1283 (1958) ................................................... 15

*Haskett v. Equifax Canada Inc.*,
(2003), 224D.L.R. (4th) 419 (Ont. C.A.) ................................................................. 9

*In re Arnette*,
454 B.R. 663 (N.D. Tex. 2011) ........................................................................... 10

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
385 F.3d 1360 (Fed. Cir. 2004) ........................................................................... 8

*Interactive Life Forms, LLC v. Weng*,
Case No. A-12-CA-1182-SS, 2013 WL 12116148 (W.D. Tex. Apr. 8, 2013)......................... 14

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)........................................................................................ 14

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sci.*,
  No. SA-11-CV-163-XR, SA-11-CV-713-XR, 2013 WL 2453267
  (W.D. Tex. June 4, 2013).......................................................................................... 13

*Landmark Technology LLC v. Aeropostale*,
  No. 6:09 CV 262, 2010 WL 5174954 (E.D. Tex. Mar. 29, 2010)........................... 13

*Mancorp, Inc. v. Culpepper*,
  802 S.W.2d 226, 228 (Tex.)..................................................................................... 10

*Manville Sales Corp. v. Paramount Systems, Inc.*,
  917 F.2d 544 (Fed. Cir. 1990) .................................................................................... 8

*Marcinowska v. IMG Worldwide, Inc.*,
  342 F. App'x 632 (Fed. Cir. 2009) ........................................................................... 15

*Morris v. Powell*,
  150 S.W.3d 212 (Tex. App. 2004).............................................................................. 10

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ................................................................................ 15

*Pieczenik v. Bayer Corp.*,
  474 F. App'x 766 (Fed. Cir. 2012) ........................................................................... 12

*PLS-Pacific Laser Sys. v. TLZ Inc.*,
  No. C-06-0485 RMW, 2007 WL 2022020 (N.D. Cal. July 9, 2007) ...................... 12

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ...................................................................................... 7

*Realtime Data, LLC v. Stanley*,
  721 F. Supp. 2d 538 (E.D. Tex. 2010)...................................................................... 13

*Religious Technology Ctr. v. Liebreich*,
  339 F.3d 369 (5th Cir. 2003) .................................................................................... 14

*Rimade Ltd. v. Hubbard Enters., Inc.*,
  388 F.3d 138 (5th Cir. 2004) .................................................................................... 10

*Southland Sec. Corp. v. INSpire Insurance Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................................... 7

*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) .................................................................................. 15

*Sun Sudan Oil Co. v. Methanex Corp.*
  (1992), 5 Alta L.R. (3d) 292 (Q.B.).......................................................................... 9

*Transamerica Life Insurance Co. v. Canada Life Assurance Co.*,
  28 O.R. (3d) 423 (Gen. Div.), aff'd [1997] O.J. No. 3754 (C.A.)........................... 9

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) ................................................................................ 10

*World Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980)............................................ 15

iii

*YETI Coolers, LLC v. RTIC Coolers, LLC,*
   1:16-CV-264-RP, 2016 WL 3970978 (W.D. Tex. July 19, 2016) .................................... 8, 10

*Ziemba v. Incipio Techs., Inc.,*
   No. 13-5590(JLL), 2014 WL 4637006 (D.N.J. Sept. 16, 2014)............................................. 13

## Statutory Authorities

35 U.S.C. § 271(a) ....................................................................................................................... 7, 8

## Rules and Regulations

Fed. R. Civ. P. 8(a) ................................................................................................................. 6, 7, 14

Fed. R. Civ. P. 12(b)(2)........................................................................................................ 2, 14, 16

Fed. R. Civ. P. 12(b)(6)............................................................................................................ passim

SLC-8422397-1

## I.       INTRODUCTION

After filing his original Complaint for patent infringement naming only Defendant James A. McLeod ("McLeod"), counsel for Plaintiff Walter Murray Pisony ("Pisony") was promptly notified that the wrong party had been sued. In response, Pisony filed a First Amended Complaint against *both* McLeod and the proper party, Defendant Commando Construction, Inc. ("CCI"), a Canadian corporation in the business of manufacturing and leasing the accused machines for almost twenty years. While the First Amended Complaint seems to allege an alter ego theory of liability against McLeod, President of CCI, in addition to alleging individual liability, the First Amended Complaint is devoid of *any* factual allegations to pierce the corporate veil and impose personal liability on an officer of a lawfully organized and operating corporation. In fact, the only allegation in the First Amended Complaint that even indicates Pisony is asserting an alter ego theory of liability against McLeod is a single paragraph in which Pisony alleges infringement by "COMMANDO and/or MCLEOD, individually and/or doing business as Commando Construction." A bare assertion that a corporate officer is "doing business as" a corporate entity does not remotely rise to the level of pleading a "plausible claim for relief" based on detailed factual allegations and should be dismissed for failure to state a claim under Rule 12(b)(6). Moreover, in describing the alleged acts of infringement, the First Amended Complaint treats CCI and McLeod, as both a corporate officer and an individual, as one and the same, consistently referring to them collectively as the "Defendants." This sort of impermissible group pleading also warrants dismissal under Rule 12(b)(6).

Moreover, Pisony's allegations of patent infringement against McLeod as an individual must also be dismissed for lack of personal jurisdiction. The law is clear that the contacts of a corporation may only be imputed to a corporate officer if the Plaintiff alleges facts sufficient to pierce the corporate veil, which Pisony has not done. Therefore, McLeod's personal contacts

with Texas are the relevant inquiry, of which there are none related to Pisony's claims or otherwise. McLeod has never engaged in activities relating to the skid hustler outside of his responsibilities as President of CCI, and Pisony has not alleged any facts describing McLeod's alleged individual infringement. In fact, McLeod does not have any personal or business contacts with the State of Texas that can even be analyzed in a personal jurisdiction inquiry, let alone minimal contacts that could possibly confer personal jurisdiction. The First Amended Complaint, therefore, must also be dismissed against McLeod in his individual capacity under Rule 12(b)(2) for lack of personal jurisdiction.

Pisony has not alleged any facts, and none exist, that establish a plausible claim of relief against McLeod as either an officer of CCI or as an individual. Accordingly, McLeod respectfully requests that all claims against him be dismissed under Rule 12(b)(2) and 12(b)(6).

## II.    FACTUAL BACKGROUND[1]

In 1999, Defendant James A. McLeod ("McLeod") and Plaintiff Murray Walter Pisony ("Pisony") incorporated Commando Construction, Inc. ("CCI") under the laws of Alberta, Canada, Exhibit A, ¶¶ 3-5, 7, Appx1-5; Exhibits A1-A2, Appx6-11 and Appx12. McLeod, a United States citizen residing in Manitoba, Canada since 1972, was in the business of pipe-laying for almost twenty years before forming CCI with Pisony, his brother-in-law. Ex. A, ¶¶ 2, 8-9, Appx1-5. Since its incorporation, CCI has been in the business of manufacturing and leasing "skid hustler" machines to third party companies in North America, including the United States. *Id.* at ¶¶ 16, 18, Appx1-5. Skid hustlers are machines used to collect, stack and bundle elongate pieces of lumber used to support gas or oil pipe line while it is being laid into the ground. *Id.* at

---

[1] Because a Rule 12(B)(6) motion to dismiss for failure to state a claim is based solely on the allegations asserted in the First Amended Complaint, the following statement of facts is submitted in support of McLeod's motion to dismiss under Rule 12(B)(2) for lack of personal jurisdiction.

16, Appx1-5. These are the machines accused of infringement in this action. *Id.,* Appx1-5. CCI is the rightful owner of U.S. Patent No. 7,320,202 (the "'202 patent"), which was based on the first skid hustler machine built by CCI in 1999-2000, and names McLeod and Pisony as joint inventors. *Id.* at ¶ 17, Appx1-5; Exhibit A6, Appx25-43; Exhibit B, ¶ 2, Appx44-46; Exhibit B1, Appx47-63.

From 1999 to 2004, McLeod and Pisony, both officers of CCI, were the sole shareholders of CCI, with each owning 50% of the shares of CCI. Ex. A, ¶¶ 7, 10, Appx1-5. On July 30, 2004, pursuant to a settlement agreement disposing of all claims in several actions filed by McLeod against Pisony in the Court of Queen's Bench of Alberta, Pisony transferred all shares of CCI to McLeod. *Id.* at 10, Appx1-5. From July 30, 2004 until December 30, 2013, McLeod was the sole shareholder of CCI. *Id.* at 10-11, Appx1-5. On December 31, 2013, McLeod sold all shares and asset of CCI to the James McLeod Holdings Ltd ("McLeod Holdings"), a Canadian corporation lawfully incorporated under The Corporations Act of the Province of Manitoba and of which McLeod is the sole shareholder. *Id.* at ¶¶ 11-14, Appx1-5; Exhibits A4-A5, Appx16-23 and Appx24. McLeod remains President of CCI. Ex. A, ¶ 15, Appx1-5.

Since Pisony transferred all shares of CCI to McLeod in 2004, CCI has maintained a principal place of business in Manitoba, Canada. *Id.* at ¶¶ 3, 6, Appx1-5; Exhibit A3, Appx13-15. CCI leases skid hustler machines to customers in the United States for use in pipe-laying projects in North America, including occasionally in this District, but it does not maintain any places of business or own any property in the Western District of Texas, the State of Texas, or anywhere in the United States. Ex. A, ¶¶ 16, 18-20, Appx1-5. CCI observes all corporate formalities, maintains corporate records, and is in compliance with the Business Corporations Act of Alberta. *Id.* at ¶ 21, Appx1-5. All business and operations in the United States relating to

3

the accused skid hustler machines is conducted by CCI. *Id.* at ¶ 22, Appx1-5. Customers contract with and pay CCI to lease machines for use in pipe-laying projects, and CCI finances construction, maintenance, transportation, and customer training relating to the skid hustler machines. *Id.,* Appx1-5. CCI maintains its own corporate bank accounts, insurance policies and loan agreements, and does not intermingle its assets with any other entities or persons, including McLeod or McLeod Holdings. *Id.* at ¶ 23, Appx1-5. It files yearly corporate tax returns, and retains its own corporate accountants and attorneys to ensure compliance with all corporate formalities and financial obligations. *Id.* at ¶¶ 23-24, Appx1-5. At all times, CCI maintains adequate capital reserves to conduct its normal and customary business operations. *Id.* at 23, Appx1-5.

All activities conducted by McLeod relating to the accused skid hustler machines are within the scope of his employment as President of CCI, for which he receives an annual salary. *Id.* at ¶ 25, Appx1-5. He has never manufactured, used, sold, offered to sell, imported, or leased skid hustler machines or any similar machines in the United States or elsewhere outside of the scope of his employment as President of CCI. *Id.* at ¶ 27, Appx1-5. McLeod has never used the assets of CCI for purposes unrelated to the business of CCI, and has never commingled his personal assets with those of CCI. *Id.* at ¶ 26, Appx1-5. While CCI has leased skid hustler machines to third parties located or performing pipe-laying jobs in the State of Texas, McLeod as no personal contacts with the State of Texas—he does not own any personal property, real property, bank accounts, or other investments in the State of Texas, and he does not contract with or otherwise have any contact with residents of the State of Texas in his personal capacity. *Id.* at ¶¶ 18, 28-31, Appx1-5. In other words, McLeod's only contact with the State of Texas, relating

to the instant action or otherwise, is within the scope of his employment as President of CCI. *Id.* at ¶ 32, Appx1-5.

Unbeknownst to McLeod until 2008, after Pisony transfer all of his shares of CCI to McLeod pursuant to the 2004 settlement agreement, Pisony filed a patent application on June 7, 2005, which eventually (and wrongfully) issued as the asserted patent in this case, U.S. Patent No. 7,591,629 (the "'629 patent"). *Id.* at ¶ 33, Appx1-5. The '629 patent claims the features of the original CCI skid hustler machine built by CCI in 1999-2000, with the addition of a grappling assembly (while the original CCI skid hustler did not include a grapple assembly, the '202 patent disclosed a grappling assembly as an alternative method to collect lumber from the ground). *Id.,* Appx1-5.

As alleged in the First Amended Complaint, on October 26, 2016, Pisony's counsel sent a cease and desist letter to McLeod claiming infringement of the '629 patent by CCI's skid hustler machines. ECF No. 3, ¶ 12. While the First Amended Complaint references the November 18, 2016 response to the cease and desist letter from McLeod and CCI's counsel (*Id.* at ¶ 13), it neglects to mention a follow-up response to the cease and desist letter dated March 31, 2017 from McLeod's newly-retained counsel (Ex. B, Appx44-46 ¶ 3; Exhibit B2, Appx64-72). This second letter was sent in response to the filing of Pisony's original Complaint on March 2, 2017, which named McLeod as the sole defendant. ECF No. 1; Ex. B, at ¶ 4, Appx44-46. The March 31 letter unequivocally explained that McLeod was an improper party to Pisony's original Complaint because all activities relating to the accused CCI skid hustler machines were solely performed by CCI as a separate and distinct corporate entity. Ex. B, at ¶¶ 3, 5-6, Appx44-46; Ex. B2, Appx64-72. Rather than respond to the March 31 letter, Pisony amended the original Complaint to join CCI as a defendant, but maintained his claims against McLeod without

5

alleging any additional facts supporting imposition of liability on McLeod in *either* his official or personal capacity. *Compare* ECF No. 1 *with* ECF No. 3; Ex. B, at ¶ 7, Appx44-46. Additionally, in the immediate weeks before filing this motion, counsel for McLeod and CCI provided Pisony's counsel with a draft declaration from McLeod attesting to most of the above-asserted facts, and requested that Pisony agree to either dismiss his claims against McLeod or amend his complaint to allege, in good faith, any facts he contends support piercing the corporate veil to impose liability against McLeod as an officer of CCI. Ex. B, at ¶ 8, Appx44-46. Pisony again refused to reconsider his position without addressing McLeod's counsel's arguments that McLeod is an improper party to this litigation. *Id.*, Appx44-46.

## III.    ARGUMENT

### A.    The First Amended Complaint Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim against McLeod

Despite Pisony's knowledge that CCI is a distinct corporate entity that conducts all business relating to the accused skid hustler machines (based on both the history between the parties and McLeod and CCI's counsel's numerous communications with Pisony's counsel), Pisony forged ahead with his conclusory and ambiguous allegations against McLeod, none of which state a plausible claim for relief against McLeod as either a corporate officer or an individual. The First Amended Complaint fails to state a claim against McLeod in his capacity as either a corporate officer or an individual, because it (1) fails to assert any facts to justify piercing the corporate veil; and (2) groups CCI and McLeod together such that it is impossible to determine the particular allegations against either named defendant.

#### 1.    Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading

6

standard Rule 8 announces does not require 'detailed factual allegations,' … it demands more

than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678

(*citing Twombly*, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face." *Id.*

To determine whether a complaint satisfies Rule 8(a)(2), a court must first "accept as true

all of the [factual] allegations contained in [the] complaint," but "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A

court is "not bound to accept as true a legal conclusion couched as a factual allegation,"

*Twombly*, 550 U.S. at 555, and should "'not strain to find inferences favorable to the plaintiffs'

or "accept 'conclusory allegations, unwarranted deductions or legal conclusions.'" *R2 Invs. LDC

v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (*quoting Southland Sec. Corp. v. INSpire Ins.

Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Next, a court must determine whether the

complaint states a plausible claim for relief, which is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to

relief." *Id.* (internal quotations omitted).

### 2. Pisony Has Not Alleged Any Facts to Pierce the Corporate Veil to Impose Personal Liability on McLeod

In order to hold a corporate officer personally liable for a corporation's infringement

under 35 U.S.C. § 271(a), there must be evidence to justify piercing the corporate veil." *Manville*

7

*Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 552 (Fed. Cir. 1990). 'Because this Court concludes that corporate veil piercing is required for personal liability of a corporate officer under § 271(a), [a plaintiff] must plausibly allege facts piercing the corporate veil with respect to the [corporate officers and owners] in order for its patent claim against [them] to survive. *YETI Coolers, LLC v. RTIC Coolers, LLC,* 1:16-CV-264-RP, 2016 WL 3970978, at *4 (W.D. Tex. July 19, 2016) (dismissing claims against corporate officers under Rule 12(b)(6) for failing to allege any facts piercing the corporate veil). Otherwise, the claim against the corporate officer and/or owner must be dismissed for failure to state a claim. *Id.* Here, while Pisony's First Amended Complaint is replete with unadorned accusations and conclusory allegations, it doesn't even attempt to recite a single factor for piercing the corporate veil, let alone assert any factual allegations showing a plausible claim for piercing the corporate veil against McLeod.

The law of the regional circuit and the state wherein the case is pending governs alter ego liability and piercing the corporate veil in a patent infringement case. *Insituform Techs., Inc. v. CAT Contracting, Inc.,* 385 F.3d 1360, 1380 (Fed. Cir. 2004). Under Texas law, "[t]his Court looks to the law of the State of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded." *Davaco, Inc. v. AZ3, Inc.,* Civil Action No. 3:07-cv-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008) (*quoting Amoco Chem. Co. v. Tex Tin Corp.,* 925 F. Supp. 1192, 1201 (S.D. Tex. 1996)). Accordingly, because CCI is an Alberta, Canadian corporation, the laws of Alberta apply to this analysis.[2] *See, e.g., Davaco,* 2008 WL 2243382, at *1 (holding Quebec law applied to alter ego analysis); *Direct Energy Marketing Ltd. v. Duke/Louis Dreyfus LLC,* No. 399CV1942(WWE), 2001 WL 789345, at *3 (D. Conn. June 13, 2001) (applying Canadian law to determine whether to disregard the corporate form).

---

[2] Currently, McLeod is unaware of any other issue in this case governed by Canadian law.

Under Canadian law, a court may disregard the corporate form under an alter ego theory, which is described as follows:

> [T]he courts will disregard the separate legal personality of a corporate entity where it is completely dominated or controlled and being used as a shield for fraudulent or other improper conduct. The first element, 'complete control', requires more than ownership. It must be shown that there is complete domination and that the subsidiary company does not, in fact, function independently … The second element, relates to the nature of the conduct: is there conduct akin to fraud that would otherwise unjustly deprive the claimant of their rights?

*Transamerica Life Ins. Co. v. Canada Life Assurance Co.* (1996), 28 O.R. (3d) 423 (Gen. Div.), aff'd [1997] O.J. No. 3754 (C.A.). The corporate must be "nothing more than a conduit used by the parent to avoid liability," *801962 Ont. Inc. v. MacKenzie Trust Co.,* [1994] O.J. No. 2105 (Gen. Div.), or "must have been incorporated for a fraudulent or improper purpose or be used by the parent as a shield for improper activity," *Haskett v. Equifax Canada Inc.* (2003), 224D.L.R. (4th) 419 (Ont. C.A.).  Canadian law also recognizes an agency theory to pierce the corporate veil. Factors courts consider under this theory include capitalization of the corporation, the degree of observance of corporate formalities, whether the profits of the corporation are treated as those of the shareholder or parent, the extent of the relationship between the business of the corporation and the shareholder or parent, the nature and extent of the business dealings between the corporation and the shareholder or parent, and corporate history. *Canada Life Assurance Co. v. C.I.B.C.* (1974), 3 O.R. (2d) 70 (C.A.); *Sun Sudan Oil Co. v. Methanex Corp.*(1992), 5 Alta L.R. (3d) 292 (Q.B.).

By way of comparison, the law of Texas is similar to that of Canada. "In Texas, 'there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and

9

(3) the corporation is used as a sham to perpetrate a fraud." *YETI,* 2016 WL 3970978, at *2

(*quoting Rimade Ltd. v. Hubbard Enters., Inc.,* 388 F.3d 138, 143 (5th Cir. 2004)). In a patent

infringement case, "the 'corporate veil' shields a company's officers from personal liability for

direct infringement that the officers commit in the name of the corporation, unless the

corporation is the officer's [or shareholder's] alter ego." *YETI,* 2016 WL 3970978, at *2 (*quoting*

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.* 609 F.3d 1308, 1313 (Fed. Cir. 2010)).

A corporation is the alter ego of an individual when "there is such unity between [the]

corporation and [the] individual that the separateness of the corporation has ceased and holding

only the corporation liable would result in injustice." *Castleberry v. Branscum,* 721 S.W.2d 270,

272-73 (Tex. 1986). The following factors are considered by courts to determine if a corporation

is merely an alter ego of an individual: "the degree to which corporate formalities have been

followed and corporate and individual property have been kept separately, the amount of

financial interest, ownership and control the individual maintains over the corporation, and

whether the corporation has been used for personal purposes." *Id.* at 272. Other factors

considered by Texas courts are "(1) the payment of alleged corporate debts with personal checks

or other commingling of funds; (2) representations that the individual will financially back the

corporation; (3) the diversion of company profits to the individual for his personal use; (4)

inadequate capitalization; and (5) other failure to keep corporate and personal assets separate." *In*

*re Arnette,* 454 B.R. 663, 686-697 (N.D. Tex. 2011) (*citing Mancorp, Inc. v. Culpepper,* 802

S.W.2d 226, 228 (Tex); *Morris v. Powell,* 150 S.W.3d 212, 220 (Tex App. 2004)).

Under *either* Canadian law or Texas law, Pisony's First Amended Complaint does not

allege a single fact to pierce the corporate veil. The First Amended Complaint names McLeod as

"James A. McLeod D/B/A Commando Construction," and alleges that "MCLEOD, individually

and/or doing business as Commando Construction, have manufactured, used distributed, sold, and/or offered for sale one or more machines that include elements reading, directly or indirectly, upon one or more claims of the Pisony Patent." ECF No. 3, at ¶ 10. Every allegation of infringement thereafter collectively refers to the "Defendants," including references to the "Defendants' machine(s), "Defendant's aforesaid activities," "Defendants have known and been aware," and "Defendants' infringement." *See, e.g.,* ECF No. 3, ¶¶ 16-25. The First Amended Complaint, however, does not address a single factor considered in an alter ego analysis under either Canadian or Texas law, e.g., control and ownership of CCI, whether CCI is being used as a shield for fraudulent conduct, CCI's capitalization, CCI's observance of corporate formalities, whether CCI has been used for personal purposes, whether there has been commingling of funds or use of corporate assets for personal purposes, and so on. Not one factor from either Canadian or Texas law regarding piercing the corporate veil and alter ego liability is remotely address in the First Amended Complaint.

The First Amended Complaint does not even allege any facts creating an inference of an alter ego relationship between McLeod and CCI. The only allegation in the First Amended Complaint that could even be construed as asserting CCI is the alter ego of McLeod is the reference to McLeod as "doing business as" CCI. But, merely referring to a corporate officer as "doing business as" a separate and distinct corporate entity is a "naked assertion devoid of any factual enhancement" and should not be accepted as true by the Court in its analysis. *See Iqbal,* 556 U.S. at 678.

In sum, the First Amended Complaint not only fails to plead a "plausible claim for relief," *Iqbal*, 556 U.S. at 679, but fails to plead *any* claim for relief against McLeod as a

corporate officer of CCI. The First Amended Complaint, therefore, should be dismissed for failure to state a claim for piercing the corporate veil against McLeod.

### 3. Pisony's Complaint Also Fails to Satisfy the Requirements of Rule 8(a)(2) Because it Constitutes an Impermissible "Group Pleading"

Pisony's First Amended Complaint treats CCI and McLeod, as both a corporate officer and an individual, as one in the same without providing any facts or explanation otherwise as to the exact theory of liability against each defendant. This is not permissible. In the First Amended Complaint, Pisony acknowledges that McLeod is an individual and CCI is a Canadian foreign corporation (ECF No. 3, ¶¶ 2-3), but then proceeds to collectively refer to the "Defendants" and claims that both CCI and McLeod, both as a corporate officer of CCI and individually, have "manufactured, used, distributed, sold and/or offered for sale" the accused machines, without regard to CCI's distinct corporate form and activities or McLeod's separate capacities as a corporate officer and an individual. *Id.* at ¶¶ 16-25. The law is clear that this type of "group pleading" is impermissible under both Form 18 and *Iqbal* and *Twombly*.

Even when infringement allegations against several defendants are based on the same underlying facts and theories of infringement, a complaint must include "allegations sufficient to give *each* named defendant sufficient notice of the particular claims and grounds for the claims against them" and "allegations of the defendants' alleged roles in violating section[] 271 … and the grounds for asserting such claims against them." *PLS-Pacific Laser Sys. v. TLZ Inc.*, No. C-06-0485 RMW, 2007 WL 2022020, at *11 (N.D. Cal. July 9, 2007) (emphasis added); *see also Pieczenik v. Bayer Corp.*, 474 F. App'x. 766 (Fed. Cir. 2012) (dismissing complaint because it did not identify which named defendants made accused product). The insufficiency of "group pleadings" has been recognized several times in the District Courts of Texas. Form 18 "require[s] that identification of accused instrumentalities be specific as to particular

defendants." *Realtime Data, LLC v. Stanley*, 721 F.Supp.2d 538 (E.D. Tex. 2010) (collecting

cases from the Eastern District of Texas holding the same); *see also Landmark Tech. LLC v.*

*Aeropostale*, No. 6:09 CV 262, 2010 WL 5174954, at *3 (E.D. Tex. Mar 29, 2010) (dismissing

claims because identification of accused products "is not specific to any particular [d]efendant");

A complaint for patent infringement must be dismissed when claims against each individual

defendant are "not made with sufficiently individualized allegations," and do not clearly allege

how any individual defendant has allegedly infringed the asserted patent. *Kinetic Concepts, Inc.*

*v. Wake Forest Univ. Health Sci.*, No. SA-11-CV-163-XR, SA-11-CV-713-XR, 2013 WL

2453267, at *6 (W.D. Tex. June 4, 2013).

      Here, the First Amended Complaint does not identify McLeod's and CCI's particular and

individual roles in the alleged infringement.[3] "Plaintiff must also allege *facts* showing each

defendant's actual personal involvement in each of the alleged wrongs. … [and] establishing

*each* defendant's liability for *each* claim asserted" *Ziemba v. Incipio Techs., Inc.*, No. 13-5590

(JLL), 2014 WL 4637006, at *4 (D.N.J. Sept. 16, 2014) (dismissing complaint and ordering that

re-pleaded claims "must contain: (a) its own cause of action against a clearly identified

defendant(s), and (b) those particular factual allegations that would allow the court to draw the

reasonable inference that said defendant(s) is liable for that particular cause of action). Instead,

Pisony's First Amended Complaint treats McLeod and CCI as if they are one and the same.

      In fact, Pisony's reference to "Defendants" collectively throughout its First Amended

Complaint renders it impossible to discern whether Pisony is alleging that McLeod and CCI are

---

[3] Because CCI admits that it conducts all business relating to the machines accused of
infringement in this action, it assumes the allegations contained in the First Amended Complaint
are made against CCI. CCI, therefore, will not challenge the First Amended Complaint under
Rule 12(b)(6) for failure to state a claim against CCI for impermissible group pleading or
otherwise.

responsible for *each* act of infringement, whether McLeod is liable for the actions of CCI under an alter-ego theory, whether Pisony is alleging divided or joint infringement, or some other theory of infringement. *See Automated Transaction LLC v. N.Y. Cmty. Bank*, No. 12-CV-3070 (JRS) (ARL), 2013 WL 992423, at *4 (E.D.N.Y. Mar 13, 2013) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."). Accordingly, the First Amended Complaint should be dismissed for failure to state a claim against McLeod for impermissible group pleading.

### B. The First Amended Complaint Should be Dismissed under Rule 12(b)(2) for Lack of Personal Jurisdiction Over McLeod

To the extent the First Amended Complaint alleges that McLeod has infringed the '629 patent in his individual capacity, separate and apart from his capacity as a corporate officer of CCI, this Court lacks personal jurisdiction over McLeod. In a patent infringement case, Federal Circuit law applies to the jurisdictional analysis. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1016 (Fed. Cir. 2009). A district court first considers whether exercising jurisdiction over the defendant comports with due process, and if due process is satisfied, the court then considers whether jurisdiction is authorized under the long-arm statute of the state in which the court sits. *Id.* "Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas." *Interactive Life Forms, LLC v. Weng,* Case No. A-12-CA-1182-SS, 2013 WL 12116148, at *1 (W.D. Tex. April 8, 2013) (*citing Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003)).

In order for a federal court to exercise jurisdiction over a nonresident defendant, the nonresident must have "minimum contacts" with the forum state and subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "The assertion of personal jurisdiction

14

satisfies due process if 'the defendant purposefully avails itself of the privilege of conducting activities within the forum state,' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.E.2d 1283 (1958), such that the defendant 'should reasonably anticipate being haled into court there,' *World-Wide Volkswagen* [*Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]." *Marcinowska v. IMG Worldwide, Inc.,* 342 F. App'x. 632, 635 (Fed. Cir. 2009).

Personal jurisdiction over a nonresident defendant may be either general or specific. *Id.* A court may exercise general jurisdiction if the nonresident defendant has 'continuous and systematic' activities in the forum state." *Id.* In order to exercise specific jurisdiction over a nonresident defendant, "the Federal Circuit considers: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Broadway National Bank v. Plano Encryption Techs., LLC,* 173 F. Supp.3d 469, 474 (W.D. Tex. 2016) (*quoting Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1231 (Fed. Cir. 2010)). It is the plaintiff's burden to show exercise of personal jurisdiction over a defendant is proper. *Id.*

This Court does not have either general or specific personal jurisdiction over McLeod in this action because McLeod does not have any contacts, let alone minimal contacts, with the State of Texas as an individual and outside of the scope of his role as President of CCI. Ex. A, ¶25, 32, Appx1-5. "[T]he general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation … [unless] the corporation is the alter ego of the individual." *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985). As such, because Pisony has not alleged any facts to pierce the corporate veil, McLeod's personal contacts with the State of Texas are the relevant inquiry, of which there are none. As an individual, he does not own

property, bank accounts, or investments in Texas, does not contract or do business with residents of Texas, and otherwise has no contacts with the State of Texas. Ex. A, at ¶¶ 28-31, Appx1-5. He does not use or lease skid hustlers in the State of Texas as an individual apart from the business of CCI. *Id.* at ¶ 27, Appx1-5. McLeod simply has no contacts with the State of Texas in his personal capacity that can even be analyzed. Accordingly, the First Amended Complaint should be dismissed against McLeod for lack of personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, McLeod respectfully requests that the Court dismiss the First Amended Complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted and Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

Date: November 30, 2017

Respectfully submitted,

By: */s/ Daisy Manning*
Daisy Manning
Missouri Bar No. 62134*
daisy.manning@huschblackwell.com
Rudolph A. Telscher, Jr.,
Missouri Bar No. 41072*
rudy.telscher@huschblackwell.com
Shannon D. Peters
Missouri Bar No. 66953*
shannon.peters@huschblackwell.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314-480-1500 Telephone
314-480-1505 Facsimile
**\*** *Pro Hac Vice*

and

Albert A. Carrion
Texas State Bar No. 03883100
HUSCH BLACKWELL, LLP
111 Congress Avenue Suite 1400
Austin, Texas 78701-4093
Telephone: 512.703.5798
Fax: 512.479.1101
Albert.Carrion@huschblackwell.com

***Attorneys for Defendant James A. McLeod and***
***Defendant/Counterclaim Plaintiff Commando***
***Construction, Inc.***

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of November 2017 the foregoing was filed electronically with the Clerk of Court and to be served via the Notice of Electronic Filing from the Court's Electronic Filing System upon all counsel of record.


*/s/ Daisy Manning*