IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MURRAY WALTER PISONY, | § | |
|     *Plaintiff,* | § | Civ. A. No. 6:17-cv-00055-RP-JCM |
| | § | |
| v. | § | |
| | § | |
| COMMANDO CONSTRUCTION, INC. and | § | JURY DEMANDED |
| JAMES MCLEOD HOLDINGS INC. | § | |
|     *Defendants.* | § | |
| | § | |

---

## PLAINTIFF MURRAY WALTER PISONY'S OPENING CLAIM CONSTRUCTION BRIEF

---

John T. Wilson
State Bar No. 24008284
Jennifer M. Rynell
State Bar. No. 24033025
Leigh Caudle Whitaker
State Bar No. 24094260
16610 Dallas Parkway, Suite 1000
Dallas, Texas 75248
(T) 972.248.8080
(F) 972.248.8088
(E) eservice@wilsonlegalgroup.com

***Attorneys for Plaintiff Murray Walter Pisony***

## <u>TABLE OF CONTENTS</u>

I.      BACKGROUND AND SUMMARY OF THE '629 PATENT ......................................... 1

II.     LEGAL STANDARDS ..................................................................................................... 3

III.    DISPUTED TERMS IN THE '629 PATENT .................................................................. 5

    A.    Plaintiff's Proposed Construction of "Extendible Mast" is Consistent with the
        Claims, the Specification, and the Understanding of a Person of Ordinary Skill in
        the Art. ......................................................................................................................... 5

    B.    This Phrase Should be Given its Plain and Ordinary Meaning. ................................ 13

    C.    Plaintiff's Proposed Construction of Claim 6 is Consistent with a Proper Reading
        of the English Language and the Understanding of a Person of Ordinary Skill in
        the Art. ....................................................................................................................... 17

IV.     CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

CASES

*Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*, No. A:17-CV-0030-LY, 2018 WL 2770648 (W.D. Tex. June 8, 2018). ........................................................................ 4

*Affinity Labs of Texas, LLC v. BMW North America, LLC*, Civ. No. 9:08CV164, 9:08CV171, 2010 WL 6746045 (E.D. Tex. May 10, 2010). ................................................................. 14

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004). ...................................... 5

*Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121 (D. Mass. 2001). ........................... 3

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000). ........................................ 13

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338 (Fed. Cir. 2014). ............................. 3, 20

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 161 F. Supp. 3d 438 (E.D. Tex. 2015)....... 7

*Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004). ................................. 4, 15

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). ...................................................................................................................... 3

*Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191 (W.D. Tex. Dec. 1, 2017). ......................................................................................................... 3, 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). ....................................................... 4, 7

*Pilot Energy Sols., L.L.C. v. OXY USA Inc.*, No. A-16-CA-00687-SS, 2017 WL 3726432 (W.D. Tex. Aug. 25, 2017). ........................................................................................ 5

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998). .................... 5, 9

*Retractable Techs. v. New Med. Techs.*, No. 4:02-CV-34, 2004 WL 435054 (E.D. Tex. Mar. 3, 2004). ............................................................................................................. 16, 17

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)............................ 3

*V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307 (Fed. Cir. 2005).................................. 4

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996). ...................................... 4

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | U.S. Patent No. 7,591,629 ("'629 Patent") |
| B | Certified Prosecution History of U.S. Patent No. 7,591,629 (PISONY003230-003468) ("Certified Prosecution History") |
| C | U.S. Patent No. 4,127,070 ("'070 Patent") |
| D | U.S. Patent No. 7,384,233 ("'233 Patent") |

Plaintiff, Murray Walter Pisony ("Pisony," "Plaintiff," or "Patentee") submits his Opening Claim Construction Brief, which includes Plaintiff's proposed constructions and related arguments and evidence as to all disputed terms of United States Patent No. 7,591,629 (the "'629 Patent"), including as to terms for which Plaintiff contends no construction is necessary. Plaintiff also submits the accompanying declaration of Dr. Jahan Rasty, Plaintiff's technical expert with an extensive background in mechanical engineering. *See* Declaration of Jahan Rasty ("Rasty Decl.") ¶¶ 1-16.

## I.    BACKGROUND AND SUMMARY OF THE '629 PATENT

This case arises under unique circumstances. Plaintiff, Murray Pisony, and his company SkidPro Works, LP are situated in the Western District of Texas in Freestone County. Mr. Pisony has ten SkidPro machines and is the primary service provider of machines in the vast United States pipeline industry for removal of wood skids during the process of laying pipelines. His brother-in-law James McLeod, President of Defendant Commando Construction, Inc. ("CCI"), is his only competitor in the space and CCI has one main customer, while Mr. Pisony services the remainder of the industry. Mr. Pisony and McLeod were formerly each 50% shareholders of CCI until the two went their separate ways in 2004. Thereafter in 2004, Mr. Pisony built his first SkidPro machine and, in 2005, filed for a patent on his inventions, which resulted in the '629 Patent. Mr. Pisony and his machines have dominated the industry ever since. In the 2004-2005 timeframe, McLeod became aware of Mr. Pisony's machine and the patent application. Indeed, sources inside the pipeline industry informed Mr. Pisony that McLeod crawled all over one of Mr. Pisony's machines at one of the work sites. In 2008, Mr. Pisony became aware that McLeod and CCI were using a "copycat" machine of Mr. Pisony's SkidPro machine. Mr. Pisony was permitted to view the "copycat" machine until McLeod arrived and instructed Mr. Pisony to leave the property. Mr.

Pisony was informed that McLeod returned to Canada with that machine in 2008 and had no further knowledge of McLeod or CCI using the "copycat" machine in the United States until 2015. The '629 Patent issued on September 22, 2009. Upon learning of McLeod/CCI's return to the United States with the "copycat" machine, Mr. Pisony began his efforts to protect his business and his intellectual property from the damage that McLeod/CCI's poorly built and unsafe knockoff has caused. This is the context in which Mr. Pisony approaches the Court for a judgment of infringement of the '629 Patent and seeking monetary damages and also a permanent injunction to prevent CCI and James McLeod Holdings, Inc. from operating their four accused machines.

The '629 Patent describes and claims inventions relating to an apparatus for use, for example, in mechanically removing pieces of wood called "skids" from the ground during pipeline construction as shown in the photograph below and stacking and bundling them into uniform packages. The invention of the '629 Patent eliminates the need for the manual labor previously required to perform this task. The apparatus of the '629 Patent can be used on a variety of terrains, including inclines and declines, and can pick up lumber from a wide radius around the apparatus and from a number of ground conditions, including rocky, muddy, and wet ground.



## II.   LEGAL STANDARDS

"Claim construction is a legal statement of the scope of the patent right." *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) (citing *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.,* 744 F.3d 1272, 1276–77, 1284 (Fed. Cir. 2014)). Claim construction is a question of law that must be resolved by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)). Its purpose is to translate the claim language "into plain English so that a jury will understand." *Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001).

Claim terms "are generally given their ordinary and customary meaning." *Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *1 (W.D. Tex. Dec. 1, 2017) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* (citing *Phillips*, 415 F.3d at 1313). "The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent." *Id.* "The Federal Circuit has reaffirmed that a departure from the ordinary and customary meaning is the exception, not the rule." *Id.* at *2 (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365 (citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in

evidence, the prosecution history." *Vitronics*, 90 F.3d at 1582 (citing *Markman*, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.* The intrinsic record also includes "prior art cited in a patent or cited in the prosecution history of the patent." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (citing *Kumar v. Ovonic Battery Co.,* 351 F.3d 1364, 1368 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357, 1371–72 n. 4 (Fed. Cir. 2002); *Vitronics*, 90 F.3d at 1582; *Markman*, 52 F.3d at 979-80).

Claim construction always begins with the language of the claims themselves. *V-Formation*, 401 F.3d at 1311. "Claim language guides the court's construction of claim terms. 'The context in which a term is used in the asserted claim can be highly instructive.' Other claims, asserted and unasserted, can provide additional instruction because 'terms are normally used consistently throughout the patent.' Differences among claims, such as additional limitations in dependent claims, can provide further guidance." *Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*, No. A:17-CV-0030-LY, 2018 WL 2770648, at *2 (W.D. Tex. June 8, 2018) (citing *Phillips*, 415 F.3d at 1312). Further, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314–15 (citing *Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004)). "[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." *Liebel-Flarsheim*, 358 F.3d at 910. It is also a well-known tenet of claim construction law that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Meetrix IP*, 2017 WL

5986191, at *9 (citing *Epos Techs.*, 766 F.3d at 1341).

"Aside from the intrinsic evidence, the Court may also consult 'extrinsic evidence,' which is 'all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Pilot Energy Sols., L.L.C. v. OXY USA Inc.*, No. A-16-CA-00687-SS, 2017 WL 3726432, at *3 (W.D. Tex. Aug. 25, 2017) (citing *Phillips*, 415 F.3d at 1317). The Federal Circuit has stated that extrinsic evidence "can shed useful light on the relevant art, but is less significant than the intrinsic record in determining the legally operative meaning of disputed claim language." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (internal quotations omitted) (citing *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n,* 366 F.3d 1311, 1318 (Fed. Cir. 2004)).

### III.   DISPUTED TERMS IN THE '629 PATENT

**A.   Plaintiff's Proposed Construction of "Extendible Mast" is Consistent with the Claims, the Specification, and the Understanding of a Person of Ordinary Skill in the Art.**

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "extendible mast" | Claim 1 | "a structural support member capable of raising and lowering" | "a vertical pole or similar structure that can increase in length" |

The Court's claim construction "must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (citing *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 693 (Fed. Cir. 1997)). As such, the "extendible mast" of Claim 1 should be construed as "a structural support member capable of raising and lowering." This construction is supported by the intrinsic record, including the claims, the specification, the prosecution history, other patents cited in the prosecution history, and how this phrase would have been understood by a person of ordinary skill in the art.

The "extendible mast" of Claim 1 is undoubtedly a structure that provides support, as indicated in Plaintiff's proposed construction. *See* Rasty Decl. ¶¶ 17-18.  Indeed, *CCI's* proposed construction provides the term "structure" as an alternative to "pole." *See* Joint Claim Construction Statement Ex. B, at 1, June 11, 2018, ECF No. 45-2. If the "extendible mast" must be able to "drive the frame about the pivotal connection" and be "operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly," it must necessarily act as a support for these elements of the apparatus of Claim 1.  *See* Rasty Decl. ¶ 18. Merriam-Webster, for example, defines the noun "support" as "a structure that holds up or serves as a foundation for something else." *Support Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/thesaurus/support (last visited July 2, 2018); *see also* Rasty Decl. ¶ 19.

The language of the claims themselves show that Plaintiff's construction is correct and that the "extendible mast" of Claim 1 is broader than the vertical pole asserted by CCI. Dependent Claim 7 of the '629 Patent describes a mast that "includes an inner mast and an outer mast, the inner mast being mounted to the chassis to extend *substantially perpendicularly upwardly* therefrom . . . " Ex. A, Claim 7 of '629 Patent (emphasis added). The definition of vertical is "perpendicular to the plane of the horizon or to a primary axis: upright." *Vertical Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/vertical (last visited July 16, 2018). Claim 7, therefore, already specifically describes a mast that is vertical in that it extends upwardly and is substantially perpendicular to the chassis, which is largely horizontal. Claim 7, therefore, necessarily *narrows* independent Claim 1 and, most importantly, shows that the Patentee intended the term "extendible mast" in Claim 1 to be *broader* than the description of a mast in Claim 7. As stated by the Federal Circuit, "the presence of a dependent claim that adds a particular

limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314–15 (citing *Liebel–Flarsheim*, 358 F.3d at 910). CCI's argument that the directional limitation in Claim 7 must also apply to the "extendible mast" in Claim 1 is improper under governing Federal Circuit precedent and must be rejected. In fact, the opposite presumption exists and CCI's alleged evidence that the mast must be vertical is insufficient to overcome it.

"The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 161 F. Supp. 3d 438, 444 (E.D. Tex. 2015) (citing *Phillips*, 415 F.3d at 1317). The prosecution history, especially here where it points directly to the specification, shows the breadth of Claim 1's "extendible mast" and the fact that there is not a directional limitation associated with it. Specifically, the examiner allowed what is now Claim 1[1] based, in part, on the Patentee's description in Paragraph 85 of the patent specification which states: "The apparatus may also comprise a mast assembly 164, *to raise and lower* the conveyor assembly 18, to accommodate for the slope of the land on which the apparatus is being used." Ex. B, Certified Prosecution History at PISONY003261 (emphasis added); *see also id.* at PISONY003435-003436. Further demonstrating its breadth and the lack of any directional limitations, the "extendible mast" of Claim 1 is described in the prosecution history as "*a driver that can be driven* to pivot the frame of the conveyor assembly relative to the chassis of the apparatus." *See* Ex. B, Certified Prosecution History at PISONY003425-003426 (emphasis added). This is one of the bases on which the

---

[1] The claims containing the term "extendible mast" and "mast" were Claims 26, 27, 30-32 in prosecution and later became Claims 1, 2, 5-7 in the issued '629 Patent. The examiner did not cite any prior art references against or issue any rejections as to Claims 26, 27, 30-32, which later became Claims 1, 2, 5-7 in the issued '629 Patent.

examiner allowed Claim 1 of the '629 Patent and it contains no reference or requirement that the "extendible mast" be vertical. *See* Ex. B, Certified Prosecution History at PISONY003435-003436.

There is additional intrinsic evidence that the "extendible mast" in the context of the '629 Patent and as understood by a person of ordinary skill in the art relating to machinery does not have to be vertical. Another United States patent cited in the prosecution history and considered by the examiner included a non-vertical mast: "a mast . . . shown generally at 90 on a superstructure 92 on top of the frame and ***is bent or disposed to one side*** with a pivot 94 . . ." Ex. C, U.S. Patent No. 4,127,070 ("'070 Patent") col. 4, ll. 18-20 (emphasis added); *see also* Ex. B, Certified Prosecution History at PISONY003385. Figure 3 of the '070 Patent is shown below with an arrow to the mast (90) added:



Ex. C, '070 Patent fig.3.

The Court should also look to the purpose of the "extendible mast" in the context of this patent as described in the patent and the prosecution history in order to arrive at the proper

construction. "A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent. *Renishaw PLC*, 158 F.3d at 1250. While CCI's arguments relating to the term "extendible mast" center largely around unrelated, nautical applications of a mast, even those are instructive in looking to the purpose of a mast in the context of the '629 Patent. For example, the purpose of a mast on a ship is to carry the sail. *See* Rasty Decl. ¶ 20; *see also* C. W. T. Layton, Peter Clissold, A. G. W. Miller, *Dictionary of Nautical Words and Terms*, Academia, p. 221 (1994), http://www.academia.edu/12096484/DICTIONARY_OF_NAUTICAL_WORDS_AND_TERMS. On a ship, the mast needs to be vertical in order to support the sail and capture the energy of the wind, which moves horizontally into the sail. *See* Rasty Decl. ¶ 20. The "extendible mast" in Claim 1 of the '629 Patent is completely different, i.e., it need only be able to "drive the frame about the pivotal connection" and be "operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly." *See* Ex. A, '629 Patent, Claim 1; *see also* Rasty Decl. ¶ 21. This angular adjustment can be done, in part, through the raising and lowering of the conveyor assembly as described in the specification. *See* Ex. A, '629 Patent, col. 2, ll. 39-41; col. 3, ll. 18-20; col. 10, ll. 20-30 and 43-45; *see also* Rasty Decl. ¶ 21. The "extendible mast" of Claim 1 is, therefore, ***only limited*** in that it must be capable of performing the specified functions. *See* Rasty Decl. ¶ 22. There is nothing in the language of Claim 1 that requires, implies, or in any way suggests a limitation on the orientation of the "extendible mast." *See* Rasty Decl. ¶ 22. Indeed, one skilled in the art at the time of the invention, including Plaintiff's expert Dr. Jahan Rasty, would have understood the "extendible mast" of Claim 1 could be accomplished in a number of ways and that it would not be restricted to a vertical pole, as proposed by CCI. *See* Rasty Decl. ¶ 23. For example, the "extendible mast" could have been motorized in any number

of ways, including with a cogged gear, threaded shaft, or hoist mechanism. *See* Rasty Decl. ¶ 23. There is no limitation in Claim 1 as to ***how*** the extendible mast must accomplish its stated function, just that it be capable of doing so.

As to the "extendible" nature of the mast, the intrinsic evidence clearly shows that the purpose of the mast as described throughout the specification is to raise and lower the conveyor assembly. *See* Ex. A, '629 Patent, col. 2, ll. 39-41; col. 3, ll. 18-20; col. 10, ll. 20-30 and 43-45. CCI asserts that "extendible" means that the mast "can increase in length." *See* Joint Claim Construction Statement Ex. B, at 1, ECF No. 45-2. There is, however, no evidence in the specification or prosecution history that the addition of the term "extendible" in the amended claims was intended to mean, refer to, or describe anything other than the mast's ability to raise and lower the conveyor assembly. In fact, the prosecution history shows that the examiner allowed the "extendible mast" language of Claim 1 based at least, in part, on the Patentee's disclosure in the specification containing this exact language and description: "The apparatus may also comprise a mast assembly 164, ***to raise and lower*** the conveyor assembly 18, to accommodate for the slope of the land on which the apparatus is being used." *See* Ex. B, Certified Prosecution History at PISONY003261 (emphasis added); *see also id.* at PISONY003435-003436. The intrinsic record contains no requirement that the mast be able to "increase in length" as CCI asserts.

The specification of the '629 Patent also indicates that the Patentee did not intend to use the word "extend" (and therefore, "extendible") as narrowly as CCI proposes. For example, the patent states with regard to one embodiment: "Extension arm 28 may be pivotally mounted and ***extend*** between working arm 26 and grapple 30." Ex. A, '629 Patent col. 4, ll. 55-56 (emphasis added). This is also shown in Figure 2 of the '629 Patent:



Ex. A, '629 Patent fig.2. In the figure above, the extension arm (labeled 28) "extends between" the grapple (labeled 30) and the working arm (labeled 26), i.e., the extension arm reaches and stretches between the grapple and the working arm. *See* Rasty Decl. ¶ 26. The arm itself does not increase in length, nor does the word "extend" as used in the '629 Patent require it to; the same is true of the "extendible mast" of Claim 1. *See* Rasty Decl. ¶ 24. This usage is also consistent with the extrinsic evidence cited by Plaintiff with regard to the use of and meaning of the words extend/extendible in the '629 Patent. *See* Rasty Decl. ¶ 26. Dictionary definitions show that the word "extend" can be defined as follows: "to spread or stretch forth . . . to cause to reach . . . to cause to be of greater area . . . to stretch out in distance, space." *Extend Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/extend (last visited July 16, 2018); *see also* Rasty Decl. ¶ 26. By way of further example, the Patentee's usage of the word "extend" as to the mechanical arm in the '629 Patent is similar to that of the human arm. The human arm extends in various directions and moves, stretches, and reaches at various angles but does not

actually increase in length. *See* Rasty Decl. ¶ 26. As Dr. Rasty states, a person of ordinary skill in the art would have understood that in order to be "extendible," the mast of Claim 1 has to be capable of raising and lowering. *See* Rasty Decl. ¶¶ 25, 27.

Additional extrinsic evidence of a non-vertical mast in the context of machinery can be found in United States Patent No. 7,384,233, which shows a "lifting unit [] carried by the chassis via a mast-like beam (12), that is pivotably connected to the chassis about a substantially horizontal axis. Power means is arranged to pivot the beam about this axis relative to the chassis." Ex. D, '233 Patent Abstract. These figures show the non-vertical "mast-like beam" pivoting at various angles on the axis including horizontally.



Ex. D, '233 Patent figs.15A-C.

Based on the foregoing, the proper construction of "extendible mast" is as Plaintiff proposes: "a structural support member capable of raising and lowering."

**B.      This Phrase Should be Given its Plain and Ordinary Meaning.**

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "the conveyor assembly includes … *a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis*" | Claim 1 | Plain and ordinary meaning.<br><br>In the alternative only, Plaintiff contends that this phrase should be accorded the meaning that would have been understood by one of ordinary skill in the art at the time of the invention, which is: "a connection that permits angular movement of the frame relative to the chassis" | "the conveyor assembly frame includes a pivot that allows the angle between the conveyor assembly frame and the chassis to change" |

Plaintiff does not believe that any portion of this phrase requires construction and that a person of ordinary skill in the art can readily understand it. *See* Rasty Decl. ¶¶ 28-29.  Indeed, this phrase does not require construction, in part, because the functional relationship of the components involved in the pivotal connection are clearly described later in the claims, i.e., "an extendible mast connected between the frame and the chassis to drive the frame about the pivotal connection." *See* Ex. A, '629 Patent, Claim 1; s*ee also* Rasty Decl. ¶ 30. In the alternative only and to the extent the Court believes the phrase requires further definition in this context, Plaintiff's proposed construction is "a connection that permits angular movement of the frame relative to the chassis." This construction, if one is required, stays true to and does not complicate the claim language by adding unnecessary words, phrases, or concepts. *See* Rasty Decl. ¶ 31.

CCI's proposed construction does not provide clarity as to the language of Claim 1, but rather impermissibly seeks to change it. "Claim construction is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000). Even if the Court determines that this phrase requires construction, it would be improper to add the words

"conveyor assembly frame," which do not appear in the italicized portion of the phrase CCI seeks to construe. The conveyor assembly *includes* a frame, but nowhere in the patent is this frame called the "conveyor assembly frame." Indeed, the language of the claim is as follows:

> wherein the conveyor assembly includes a frame, a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis, an extendible mast connected between the frame and the chassis to drive the frame about the pivotal connection and a receiving bin and a conveyor carried on the frame, the conveyor positioned between the receiving bin and the stacking assembly and being operable to move lumber from the receiving bin to the stacking assembly and the mast being operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly.

Ex. A, '629 Patent, Claim 1. The conveyor assembly includes a number of elements such as a frame, a pivotal connection, an extendible mast, and a conveyor positioned between the receiving bin and the stacking assembly. *Id*. CCI seeks to inject the "conveyor assembly frame includes a pivotal connection" language in an attempt to conflate the "frame" and "pivotal connection" elements and to try to fix the location of the pivotal connection *on* the frame. But in the context of the phrase being construed, the pivotal connection described in the claims is *for* the frame and does not have to be *on* the frame, as CCI's construction suggests. *See* Rasty Decl. ¶ 32. The choice of words by the Patentee is clear and there is no language in the patent, prosecution history, or otherwise indicating that the pivotal connection has to be *on* the frame. CCI's proposed construction simply seeks to rewrite the language of Claim 1. Any construction containing CCI's location-based limitation would be erroneous. "Unless compelled to do otherwise, the court should give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Affinity Labs of Texas, LLC v. BMW North America, LLC*, Civ. No. 9:08CV164, 9:08CV171, 2010 WL 6746045, at \*8 (E.D. Tex. May 10, 2010) (citing *Rexnord Corp. v. Laitram*

*Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)). The specification of the '629 Patent addresses the pivotal connection in one embodiment stating that "the end of conveyor assembly 18 may also pivot about pivot point 165." Ex. A, '629 Patent, col. 10, ll. 41-42. As shown in Figures 10A-C below, 165 is the pivotal connection (arrow to identifier 165 added). The location of the pivotal connection *in this particular embodiment* does not, however, in any way limit the placement or location of the pivotal connection in Claim 1. It is well established Federal Circuit law that "it is improper to read a limitation from the specification into the claims." *Liebel-Flarsheim*, 358 F.3d at 904.



Ex. A, '629 Patent figs.10A-C.

The prosecution history also makes clear that the pivotal connection is *for* the frame, i.e., so that the angle of the frame can be adjusted relative to the chassis and, again, does not contain or suggest any limitation on the location of the pivotal connection. Patentee's counsel described, in part, what is now Claim 1 of the '629 Patent as "a conveyor assembly upstream of a stacking assembly that includes a driver that can be driven *to pivot the frame of the conveyor assembly* relative to the chassis of the apparatus." Ex. B, Certified Prosecution History at PISONY003426 (emphasis added). Patentee's prosecution counsel further stated that none of the prior art references cited by the examiner (as to other claims) "teach or suggest the function, or any component for achieving, *angular adjustment of the frame of the conveyor assembly upstream of the stacking assembly to adjust the approach angle* of the conveyor relative to the unscrambling hopper." Ex. B, Certified Prosecution History at PISONY003426 (emphasis added). These descriptions and arguments are one of the bases on which the examiner allowed the current claims of the '629 Patent. *See* Ex. B, Certified Prosecution History at PISONY003435-003436. And there is no limitation on the location of the "pivotal connection" in Claim 1 such as that proposed by CCI.

Moreover, the only claim in the '629 Patent that deals in any way with the location of Claim 1's "pivotal connection" is Claim 3 in which the pivotal connection "connects between the frame and the stacking assembly." Ex. A, '629 Patent, Claim 3. This limitation in the dependent claim is not present in Claim 1, nor is any other location-based limitation. "Under the theory of claim differentiation, 'there is a rebuttable presumption that different claims are of different scope.'" *Retractable Techs. v. New Med. Techs.*, No. 4:02-CV-34, 2004 WL 435054, at *7 (E.D. Tex. Mar. 3, 2004) (citing *Sunrace Roots Enter. Co., LTD. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003)). "That presumption is 'especially strong' where the limitation under consideration is the only meaningful difference between the independent and dependent claim and

a party argues that the limitation in the dependent claim should be read into the independent claim." *Id.* That is precisely the case here.

The intrinsic and extrinsic evidence stands in stark contrast to CCI's proposed construction. As such, the Court should reject it in full and defer to the plain and ordinary meaning as would have been easily understood by one skilled in the art.

**C.    Plaintiff's Proposed Construction of Claim 6 is Consistent with a Proper Reading of the English Language and the Understanding of a Person of Ordinary Skill in the Art.**

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "mast includes a hydraulic cylinder drivable to telescope to various lengths" | Claim 6 | Plain and ordinary meaning.<br><br>In the alternative only, Plaintiff contends that this phrase should be accorded the meaning that would have been understood by one of ordinary skill in the art at the time of the invention, which is: "mast incorporates a hydraulic cylinder drivable to telescope to various lengths." | "a hydraulic cylinder within the extendable mast causes the extendable mast to vary in length in a telescoping manner (i.e., overlapping sections slide in and out from one another)" |

Plaintiff does not believe that any portion of this phrase requires construction and that a person of ordinary skill in the art can readily understand it. *See* Rasty Decl. ¶¶ 33-34. In the alternative only and to the extent the Court believes the word "includes" requires further definition in this context, Plaintiff's proposes substituting the word "incorporates," i.e., "mast incorporates a hydraulic cylinder drivable to telescope to various lengths." *See* Rasty Decl. ¶ 35. Merriam-Webster's dictionary defines the word "include" to mean, among other things, "to comprise as part of a whole . . . to contain between or within." *Include Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/include (last visited July 16, 2018); *see also* Rasty Decl. ¶ 36. As Dr. Rasty states, one of skill in the art would understand that the word "includes"

in the context of Claim 6 of the '629 Patent is consistent with this definition and also with its synonym "incorporates," as used in Plaintiff's alternative-only construction. *See* Rasty Decl. ¶¶ 35-36.

Both the plain and ordinary meaning and Plaintiff's alternative-only construction are also supported by the intrinsic evidence, which show the manner in which the Patentee intended to use the word "includes" in the context of claim 6. Canadian Patent Document No. 02315046 ("Canadian '046") cited in the prosecution history and considered by the examiner demonstrates common usage of the term "includes" in the specific context of a cylinder: "The hitch 23 includes a cylinder 112 . . ." Canadian '046, p. 24, ll. 17-18 and fig.6; *see also* Ex. B, Certified Prosecution History at PISONY003328-003373.



Canadian '046 fig.6 (arrow to cylinder 112 added).

This is especially compelling because the inventors of Canadian '046 are the opposing parties in this case—Plaintiff, Murray Pisony, and President of Defendant CCI, James McLeod.

On the other hand, CCI's proposed construction of Claim 6 is wholly improper based on the simple structure of the phrase. CCI asserts that the phrase "drivable to telescope to various lengths" modifies "mast" and not "hydraulic cylinder." This is an incorrect reading of the English language because, as shown below, it is the ***hydraulic cylinder*** that would telescope to various lengths and not the mast. "Mast" is the subject noun of the phrase. "Includes" is the predicate. "Cylinder" is a direct object or object noun, which is described by three adjectives – "a," "hydraulic," and "drivable." The phrase "to telescope to various lengths" is an infinitive (phrase as an adverb) that further describes the hydraulic cylinder, i.e., that it is drivable to telescope to various lengths. The proper English sentence diagram would appear as follows:



And as Dr. Rasty confirms from a technical standpoint and as one skilled in the art, that the nature and function of the piston within a hydraulic cylinder is to telescope to various lengths. *See* Rasty Decl. ¶ 37.

In addition to being grammatically incorrect, CCI impermissibly seeks to add words and phrases that simply do not appear anywhere in the patent claims or specification and are not properly part of any reasonable construction of Claim 6. CCI's proposed limitation that the mast has to "vary in length in a telescoping manner (i.e. overlapping sections slide in and out from one another)" has no support in the claims, specification, or prosecution history. In fact, the words

"overlapping," "overlap," and "slide" do not appear anywhere in the prosecution history or in the '629 Patent itself with regard to the mast. CCI's attempt to rewrite the claims in this regard must be rejected outright. The Federal Circuit has opined that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Epos Techs.*, 766 F.3d at 1341 (citing *Phillips*, 415 F.3d at 1316). This guidance is particularly instructive here, as CCI seeks to add numerous words and concepts that significantly depart from the language of what should be a straightforward, understandable phrase.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court adopt Plaintiff's proposals as proper constructions for these disputed claim terms and phrases.

**DATED**: July 20, 2018                    Respectfully submitted,

                                            **WILSON LEGAL GROUP P.C.**

                                            By:    /s/ John T. Wilson
                                                 John T. Wilson
                                                 State Bar No. 24008284
                                                 Jennifer M. Rynell
                                                 State Bar. No. 24033025
                                                 Leigh Caudle Whitaker
                                                 State Bar No. 24094260
                                                 16610 Dallas Parkway, Suite 1000
                                                 Dallas, Texas 75248
                                                 (T) 972.248.8080
                                                 (F) 972.248.8088
                                                 (E) eservice@wilsonlegalgroup.com

                                                 *Attorneys for Plaintiff*
                                                 *Murray Walter Pisony*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2018, the foregoing was electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

*/s/ John T. Wilson*

John T. Wilson