**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| MURRAY WALTER PISONY, | Case No.: 6:17-cv-00055 RP-JCM |
| *Plaintiff/Counterclaim Defendant,* | |
| v. | JURY DEMAND |
| COMMANDO CONSTRUCTION, INC. and JAMES MCLEOD HOLDINGS, INC., | |
| *Defendants/Counterclaim Plaintiffs.* | |

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  RESPONSE TO PLAINTIFF'S UNSUPPORTED FACTUAL BACKGROUND ........... 1

III.  ARGUMENT ............................................................................................................. 2

    A.  "an extendible mast" ...................................................................................... 2

        1.  Plaintiff invites this Court to commit clear legal error and improperly construe "an extendible mast" as a means-plus-function limitation ........... 3

        2.  Plaintiff's claim differentiation arguments are also legally erroneous ....... 7

        3.  Plaintiff's proposed claim construction is divorced from the plain language, specification and prosecution history of the '629 patent. ........... 9

        4.  The extrinsic evidence cited by Plaintiff either supports *CCI/JMH's* proposed construction or contradicts the intrinsic evidence ..................... 13

    B.  "the conveyor assembly includes … a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis" .......................... 17

    C.  "the mast includes a hydraulic cylinder drivable to telescope to various lengths" ........................................................................................................ 19

IV.  CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.,*
    483 F.3d 800 (Fed. Cir. 2007) ........................................................................ 15

*Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.,*
    674 F.3d 1365 (Fed. Cir. 2012) ...................................................................... 13

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016) ........................................................... 7, 8, 11

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP,*
    616 F.3d 1249 (Fed. Cir. 2010) .................................................................. 18, 20

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006) ...................................................................... 6, 10

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,*
    279 F.3d 1022 (Fed. Cir. 2002) ...................................................................... 12

*GPNE Corp. v. Apple Inc.,*
    830 F.3d 1365 (Fed. Cir. 2016) .................................................................. 8, 18

*Hockerson-Halberstadt, Inc. v. Converse Inc.,*
    183 F.3d 1369 (Fed. Cir. 1999) ...................................................................... 11

*In re Schreiber,*
    128 F.3d 1473 (Fed. Cir. 1997) ........................................................................ 4

*Indacon, Inc. v. Facebook, Inc.,*
    824 F.3d 1352 (Fed. Cir. 2016) ........................................................................ 8

*Iovate Health Sci., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.,*
    586 F.3d 1376 (Fed. Cir. 2009) ...................................................................... 17

*K-2 Corp. v. Salomon S.A.,*
    191 F.3d 1356 (Fed. Cir. 1999) ........................................................................ 4

*Kraft Foods, Inc. v. Int'l Trading Co.,*
    203 F.3d 1362 (Fed. Cir. 2000) ........................................................................ 8

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004) .......................................................................... 7

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.,*
    395 F.3d 1364 (Fed. Cir. 2005) ...................................................................... 11

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.,*
    831 F.3d 1350 (Fed. Cir. 2016) ........................................................................ 9

*Nystrom v. TREX Co., Inc.,*
    424 F.3d 1136 (Fed. Cir. 2005) ...................................................................... 14

SLC-8707687-2

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
  704 F.3d 958 (Fed. Cir. 2013) ................................................................. 16

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................... passim

*Renishaw PLC v. Marposs Societa' per Aziona*,
  158 F.3d 1243 (Fed. Cir. 1998) ................................................. 10, 19, 20

*Standard Oil Co. v. Am. Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985) ................................................................. 18

*Tokai Corp. v. Easton Enter., Inc.*,
  No. EDCV 07-883-VAP, 2009 WL 1582924 (C.D. Cal. June 2, 2009) ................................ 14

*Watts v. XL Sys., Inc.*,
  232 F.3d 877 (Fed. Cir. 2000) ................................................................... 5

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) ................................................................. 5

### Statutory Authorities

35 U.S.C. § 112(f) ................................................................................. 3, 5, 6

### Rules and Regulations

Manual of Patent Examining Procedure § 2173.05(g) ................................................ 4, 7

Local Rule AT-4(c) ........................................................................................ 2

iii

## I.     INTRODUCTION

The asserted '629 patent is relatively straightforward and uses simple claim language that should be readily understood by both lay persons and persons having ordinary skill in the art. But in an effort to stretch the asserted claims well beyond their plain and ordinary meaning to cover far more than what was "invented," Plaintiff has created several unreasonable claim construction disputes requiring the Court's attention. In order to create these disputes when none should exist, Plaintiff ignores the plain language of the claims, up to the point their specific limitations are virtually erased, and disregards the specification's detailed description of the invention and the '629 patent's prosecution history, all confirming that Plaintiff is now seeking to recapture the same claim scope repeatedly rejected by the Patent Office. And, to support his meritless arguments, Plaintiff provides the Court with misleading and inaccurate legal standards in direct contravention of black letter patent law, encouraging the Court to commit reversible legal error.

CCI/JMH's proposed constructions, on the other hand, reflect the ordinary and customary meaning of the claim terms Plaintiff actually used to claim his "invention" and as understood by a person having ordinary skill in the art, which are consistent with the plain teachings of the patent's specification. Moreover, CCI/JMH's proposed constructions take into account the '629 patent's entire prosecution history in order to capture the correct scope of the claims. For these reasons, the Court should adopt CCI/JMH's proposed claim constructions.

## II.     RESPONSE TO PLAINTIFF'S UNSUPPORTED FACTUAL BACKGROUND

As the Court may have gleaned from the parties' opening claim construction briefs, there is a long and contentious history between the parties. While CCI and JMH provided an objective account of the facts relevant to the parties' dispute to provide context for the instant claim construction arguments, Plaintiff asserts a number of wholly unsupported and egregious

1

allegations to which CCI and JMH must respond.

As an initial matter, Plaintiff's factual background contains no evidentiary support in violation of this Court's Local Rules. New Attorney Rule AT-4(c), effective April 17, 2017, states "[b]riefs and memoranda should not refer to or rely on facts that are not properly of record." AT-4(c). Not only are Plaintiff's "facts" entirely unsupported, they are not remotely relevant here—they do not provide any context to aid the Court in understanding the words of the claims or the basis for the parties' claim construction disputes.

Moreover, Plaintiff disparages and defames CCI/JMH by characterizing the accused machines as "copycat[s]" and "poorly built and unsafe knockoffs," again with zero factual support or citation to evidence. This also violates Local Rule AT-4(c).[1] Finally, Plaintiff's allegations are grossly misleading, and, in some instances, outright false. For instance, Plaintiff claims he had no knowledge of CCI leasing the accused machines in the United States between 2008 and 2015, but emails produced by Plaintiff in discovery unmistakably show Plaintiff was aware of at least one 2010-2011 CCI pipeline job in the United States as early as 2013.[2] Manning Decl., ¶ 2. None of these alleged facts should be considered by the Court.

## III.    ARGUMENT

### A.    "an extendible mast"

CCI/JMH's proposed construction for "extendible mast"—"a vertical pole or similar structure that can increase in length"—is the ordinary and customary meaning of the term as

---

[1] "Neither written submissions nor oral presentations should disparage the integrity, intelligence, morals, ethics or personal behavior of an adversary unless such matters are directly relevant under the controlling substantive law." AT-4(c).

[2] The referenced document was designated by Plaintiff as "Attorney's Eyes Only." Manning Decl., ¶ 3. Due to the confidentiality of this document and its irrelevance to claim construction, CCI/JMH does not provide it as an exhibit to this memorandum. However, CCI/JMH will be prepared to provide this document to the Court at the claim construction hearing.

2

understood by a person having ordinary skill in the art ("PHOSITA"). Dkt. 52 at 11; Dkt. 52-1, Crawford Decl., ¶¶ 27-29. The specification and prosecution history confirm Plaintiff did not redefine the term "extendible mast," either explicitly or implicitly, in a manner departing from its ordinary and customary meaning, and certainly not a *broader* meaning as Plaintiff now asserts.

On the other hand, Plaintiff's proposed construction of "extendible mast"—"a structural support member capable of raising and lowering"—invites the Court to commit several reversible errors. First, Plaintiff proposes a construction that reads out specifically claimed structure, and only accounts for the *function* of the "extendible mast," urging this Court to construe the term in a manner that improperly invokes means-plus-function claiming under 35 U.S.C. § 112(f) (formerly § 112 ¶ 6). Second, Plaintiff asserts a flawed theory of claim differentiation that improperly broadens the scope of "an extendible mast" far beyond its ordinary meaning and the '629 patent's teachings. Third, Plaintiff's proposed construction requires the Court to ignore the plain and ordinary meaning of "extendible mast," the express teachings of the patent's specification, and the Patent Office's prior rejection of claims having the same broad scope Plaintiff now urges the Court to adopt. Fourth, Plaintiff avoids the most relevant and dispositive intrinsic evidence, instead relying heavily on extrinsic evidence that contradicts the '629 patent in violation of the seminal claim construction case, *Phillips v AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

### 1.    Plaintiff invites this Court to commit clear legal error and improperly construe "an extendible mast" as a means-plus-function limitation

The term "an extendible mast" is understood by a PHOSITA to refer to a specific structure with a particular configuration— "a vertical pole or similar structure that can increase in length." This specific structure is explicitly described in the specification consistent with the plain import of the claim language. Plaintiff, however, throughout its opening brief, repeatedly

3

contends this term does not require **any** particular structure at all, and that it must only be capable of performing the recited functions in the claim:

- "The 'extendible mast' of Claim 1 is, therefore, **only limited** in that it must be capable of performing the specified functions" (Dkt. 51 at 9);

- "There is no limitation in Claim 1 as to **how** the extendible mast must accomplish its stated function, just that it be capable of doing so" (*Id.* at 10); and

- the extendible mast "**need only be able to** 'drive the frame about the pivotal connection' and be 'operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly'" (*Id.* at 9) (emphasis added).

In other words, Plaintiff argues that "extendible mast" does not limit the claims to any particular structure, but instead encompasses an infinite number of "structural support members" that must merely be capable of "raising and lowering the conveyor frame." But, by making this argument and asserting this proposed construction, Plaintiff seeks to transform a clear and specifically claimed structural limitation into a limitation that is *only* defined by its function. This is legal error.

Patent claims may recite features of an apparatus either structurally or functionally. *In re Schreiber,* 128 F.3d 1473, 1478 (Fed. Cir. 1997). When a claim recites functional limitations, it must be determined whether the claim also recites specific structure to perform the recited functions. If specific structure is recited followed by further limiting functions, this is called "functional claiming." Manual of Patent Examining Procedure (MPEP) § 2173.05(g) (*citing K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) ("the functional language tells us something about the structural requirements")); *see also In re Schreiber*, 128 F.3d at 1478 (claims directed to "conical spout" (sufficiently definite structure) allowing several kernels of popcorn to pass through at the same time (the further limiting function of the structure)).

Conversely, when "a claim term fails to 'recite sufficiently definite structure' or else

4

recites 'function without reciting sufficient structure for performing that function,'" the claim

term is construed as a means-plus-function limitation under 35 U.S.C. § 112(f) which provides:

> An element in a claim for a combination may be expressed as a **means or step for performing a specified function without the recital of structure**, material, or acts in support thereof, and **such claim shall be construed to cover the corresponding structure, material, or acts described in the specification**.

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-1348 (Fed. Cir. 2015) (en banc in

relevant part) (*citing Watts v. XL Sys., Inc.,* 232 F.3d 877, 880 (Fed. Cir. 2000)) (emphasis

added). To determine whether a claim term invokes § 112(f), "the essential inquiry is not merely

the presence or absence of the word 'means' but *whether the words of the claim are understood*

*by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for*

*structure*." *Id.* at 1348 (emphasis added). Once the claimed function is identified, a court must

"determine what structure, if any, disclosed in the specification corresponds to the claimed

function." *Id.* at 1351. Means-plus-function claiming "plac[es] specific constraints on how such a

limitation is to be construed, namely, by *restricting the scope of coverage to only the structure,*

*materials, or acts described in the specification* as corresponding to the claimed function and

equivalents thereof." *Id.* at 1347 (emphasis added).

 Plaintiff contends "an extendible mast" is "*only limited* in that it must be capable of

performing the specified functions." Dkt. 51 at 9. In other words, Plaintiff contends "extendible

mast" is a claim term defined solely by its function. But, by disregarding the specific structure

recited in the claims, and proposing a construction using the broad generic term "structural

support member," which encompasses *any* "member" that provides "structural support," Plaintiff

is in effect arguing "an extendible mast" is a means-plus-function claim term. *Williamson*, 792

F.3d at 1350 (holding "distributed learning control module" was a generic "nonce word"). This is

contrary to long-standing patent law and cannot be adopted for that reason alone.

When a claim term "recites sufficiently definite structure"—like "an extendible mast"—that structure cannot be ignored and simply replaced with a generic term covering each and every structure known to man that can perform the claimed functions. "Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). Plaintiff's argument that the physical structure specifically recited in claim 1 should be disregarded and replaced with a non-limiting nonce term is an overt attempt to impermissibly broaden the scope of claim 1.

Moreover, assuming *arguendo* that "an extendible mast" does not recite sufficiently definite structure to a PHOSITA, the "extendible mast" would be limited to the particular structure disclosed in the specification to perform the recited functions. § 112(f). The *only* structure described in the specification that corresponds to each recited function is the "mast assembly" having the telescoping inner mast/outer mast structure depicted in all of the figures of the '629 patent and specifically claimed in dependent claim 7. This structure is *narrower* than the construction proposed by CCI/JMH, which encompasses any "vertical pole or similar structure that can increase in length."

Nevertheless, it is without question that an "extendible mast" is not a means-plus-function limitation. Indeed, a PHOSITA would understand the ordinary and customary meaning of "mast" is a generally vertical pole-like structure, which is confirmed by its description in the specification. Crawford Decl., ¶¶ 27-30, 33-35. The mast is also "extendible," which a

6

PHOSITA would understand, in the context of the claim language and the specification, means "capable of increasing in length." *Id.*, ¶¶ 32, 33-37. While the "extendible mast" is further limited by its ability to perform functions recited later in the claim, these separate functional limitations do not transform the claim term into a means-plus-function limitation. To the contrary, this is functional claiming because it "involves ***the recitation of some structure followed by its function***." MPEP § 2173.05(g) (emphasis added). Indeed, CCI/JMH's proposed construction—"a vertical pole or similar structure that can increase in length"—captures the specific structure recited in the claims. The ***separate*** functional limitations of claim 1 further limit the "extendible mast" to those capable of "driv[ing] the frame about the pivotal connection … and being operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly, but they are separately recited limitations that cannot be imported into the construction of "extendible mast."[3]

### 2. Plaintiff's claim differentiation arguments are also legally erroneous

Plaintiff also distorts well-established Federal Circuit law regarding the doctrine of claim differentiation in his efforts to stretch the bounds of "extendible mast" far beyond its customary and ordinary meaning. He argues "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarshiem Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). Plaintiff, however, fails to provide the Court with a *comprehensive* explanation of this "governing Federal Circuit precedent," which *also* provides that ***"[t]his court has declined to apply the doctrine of claim differentiation where 'the claims are not otherwise identical in scope.'"*** *Apple*, 842 F.3d

---

[3] As discussed further in Section III(A)(3), if the recited functions relating to "an extendible mast" are incorporated into its construction, it would improperly render the functional limitations redundant. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016).

at 1238 (emphasis added) (*quoting Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016)); *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016) (claim differentiation does not apply when the subject claims differ in more ways than the specific disputed term, i.e., when the dependent claim has multiple limitations not found in the independent claim it depends from). "[T]hat the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, ***but only that at least one limitation must differ***." *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (emphasis added).

Plaintiff argues claim 7, which recites, *in part,* "the mast includes an inner mast and an outer mast, the inner mast being mounted to the chassis to extend substantially perpendicularly upwardly therefrom," means that the "extendible mast" of independent claim 1 does not have to be vertically oriented. Dkt. 51 at 5-6. This argument has no merit under the law. As evident from the quoted language, claim 7 recites *several* additional limitations that are not present in independent claim 1, including (1) "an inner mast"; (2) "an outer mast"; (3) "the outer mast being pivotally connected to the inner mast and being pivotally connected to the frame"; (4) "at least one of the inner mast and the outer mast having an adjustable length to move the frame to a selected height relative to the chassis to select the spacing therebetween." Dkt. 52-4, Ex. A, claim 7. CCI/JMH's proposed construction of "extendible mast" does not require *any* of the additional limitations of claim 7—it does not require an inner or outer mast, it does not limit how the mast must be connected to the chassis and the frame, and it does not require a pivotal connection. It plainly does not render claims 1 and 7 identical in scope as required to invoke the doctrine of claim differentiation. *See Apple*, 842 F.3d at 1238.

Notwithstanding Plaintiff's erroneous application of the doctrine of claim differentiation,

the particular limitation of claim 7 that Plaintiff contends shows the "extendible mast" need not

be vertically-oriented also differs from claim 1 in that it specifies how and where "the inner

mast" connects to other parts of the claimed machine. Claim 1 neither requires an "inner mast"

nor that the "extendible mast" be "mounted to the chassis." Indeed, claim 1 only requires "an

extendible mast connected *between* the frame and the chassis," but claim 7 specifies that in the

two-part "extendible mast" embodiment, the "inner mast" is "mounted to the chassis" and the

"outer mast" is "pivotally connected to the frame." Ex. A, claims 1, 7. This is certainly not

identical in scope to CCI/JMH's proposed construction of "a vertical pole or similar structure

that can increase in length."

Moreover, "the language of a dependent claim cannot change the scope of an independent

claim whose meaning is clear on its face." *Multilayer Stretch Cling Film Holdings, Inc. v Berry*

*Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016) ("The dependent claim tail cannot wag the

independent claim dog."). Similar to Plaintiff's means-plus-function argument, his claim

differentiation argument is based on an erroneous and incomplete interpretation of patent law

and should be rejected.

### 3.    Plaintiff's proposed claim construction is divorced from the plain language, specification and prosecution history of the '629 patent.

The Federal Circuit, sitting *en banc,* made clear in *Phillips* that "the words of a claim are

generally given their ordinary and customary meaning," but they "must be read in view of the

specification … [which] is the single best guide to the meaning of a disputed term," in addition

to the prosecution history which "can often inform the meaning of the claim language …"

*Phillips*, 415 F.3d at 1312, 1315, 1317 (internal quotations omitted). Plaintiff, however,

fastidiously avoids the most relevant intrinsic evidence in its opening brief, instead focusing on

inconsistent extrinsic evidence, irrelevant portions of the specification, and ambiguous

statements in the prosecution history. Again, Plaintiff urges this Court to ignore decades of Federal Circuit law and the language and express teachings of the '629 patent.

Plaintiff correctly acknowledges "[t]he Court's claim construction 'must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property.'" Dkt. 51 at 5 (*quoting Renishaw PLC v. Marposs Societa' per Aziona*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). Yet, Plaintiff never addresses what the ordinary and customary meaning of "extendible mast" is to a PHOSITA at the time of the alleged invention. In fact, Plaintiff does not provide a meaning for the term "mast" at all. Plaintiff and his expert, Dr. Rasty, simply skip over this crucial step in the analysis, and focus on later-recited functional limitations that are not in dispute. As discussed above, the specifically claimed "extendible mast" structure and the two following functional limitations *are separate limitations*. A patentee may not "argue that physical structures and characteristics specifically described in a claim are merely superfluous," *Bicon*, 441 F.3d at 950, but this is precisely what Plaintiff urges the Court to do here.

Plaintiff argues that the '629 patent contains no reference or requirement that the extendible mast be vertical. Dkt. 51 at 7-8. But the plain and ordinary meaning of "mast" is just that—a vertical pole-like structure. Crawford Decl., ¶¶ 27-30. "Mast" has orientation connotation. *Id.*, ¶¶ 29-31. Moreover, a PHOSITA would also understand the term "extendible" in the context of the claim language to mean "to vary or increase in length." *Id.*, ¶ 32. The Federal Circuit has recognized that, in cases like this, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Moreover, proper claim construction "demands interpretation of the entire claim in

10

context, not a single element in isolation." *See Hockerson-Halberstadt, Inc. v. Converse Inc*., 183 F.3d 1369, 1374 (Fed. Cir. 1999). Claim 1 requires the "extendible mast" (a specific structure) be "connected between the [conveyor] frame and the chassis to drive the frame about the pivotal connection" and "operable to drive adjustment of the angle of the [conveyor] frame relative to the chassis to select the approach angle for the conveyor relative to the stacking assembly" (further limiting functions). Ex. A, claim 1. As admitted by Plaintiff, these additional functional limitations already require that the "extendible mast" be capable of supporting, raising and lowering the conveyor frame. Dkt. 51 at 6, 9; *see also* Crawford Decl., ¶ 43. Thus, Plaintiff's proposed construction, "a structural support member capable of raising and lowering," is redundant of the remainder of the claim and impermissibly renders the term "extendible mast" meaningless. "[C]onstruing a claim term to include features of that term that are already recited in the claims would make those expressly recited features redundant." *Apple*, 842 F.3d at 1238 (*citing Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)). In other words, under Plaintiff's proposed construction, claim 1 has identical meaning if "extendible mast" is replaced with the generic word "member" (i.e., "a member connected between the frame and the chassis to drive the frame about the pivotal connection … the member being operable to drive adjustment of the angle of the frame …").

The "extendible mast" is described in two paragraphs of the specification, but **Plaintiff only cites to the first sentence** of this description—[t]he apparatus may also comprise a mast assembly 164, to raise and lower the conveyor assembly 18, to accommodate for the slope of the land on which the apparatus is being use." Dkt. 51 at 10. But following this statement, the specification continues to describe the "mast assembly," including that "the conveyor assembly may be *moved up or down **along** mast assembly*," before describing the particular two-part "mast

assembly" embodiment. Ex. A, 10:46-47; *see also* Dkt. 52 at 12-13. This description of the "mast assembly" clearly indicates that the "mast" must be a vertical pole-like structure, just as a PHOSITA would understand its plain and ordinary meaning. Crawford Decl., ¶¶ 33-35. And, while the word "extendible" is not used in the specification's description of the "mast assembly," its description conveys to a PHOSITA that it "moves vertically" along its longitudinal axis. Ex. A, 10:46-50. Crawford Decl., ¶¶ 34-37. Despite "extendible mast" being the most crucial claim limitation in dispute, Plaintiff ignores the specification's only description of this claim term.

In fact, instead of analyzing the full description of "mast assembly," Plaintiff focuses on the term "extend between" found in another part of the specification relating to a completely different component—a grapple assembly. Specifically, "[e]xtension arm 28 may be pivotally mounted and extend between working arm 26 and grapple 30." Ex. A, 4:55-56. "Extend between," however, is not only different language than "extendible," it is used in a different context. The extension arm "extends between" the working arm and grapple, which are all part of a "grapple assembly 14." *Id.*, 4:40-56. This signifies the extension arm "reaches" or "stretches" between the working arm and grapple, i.e., it is connected at one end to the working arm and the other end to the grapple. In contrast, the word "extendible" as used in the term "extendible mast" conveys an alternative meaning of "extend"—the vertical pole-like structure must be able *to increase in length*. Crawford Decl., ¶ 32. When the same word is used in different contexts in the specification and claims, different meanings are appropriate. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1031 (Fed. Cir. 2002) (because "[t]he phrase 'substantially constant' denotes language of approximation, while the phrase 'substantially below' signifies language of magnitude, i.e., not insubstantial … the word 'substantially' should not necessarily be interpreted to have the same meaning in both phrases").

12

Plaintiff also claims there is no evidence in the patent's prosecution history that requires "mast" to have a vertical orientation or that "extendible" requires anything more than the "ability to raise and lower the conveyor assembly." Dkt. 51 at 10. The prosecution history, however, directly refutes this assertion. First, the patent examiner repeatedly rejected dependent claims directed to "a means of raising and lowering the conveyor assembly" as anticipated by the '202 counterpart, jointly owned by Plaintiff and Mr. McLeod. Dkt. 52 at 14. But, as discussed above, Plaintiff argues the "extendible mast" is "*only limited* in that it must be capable of performing the specified functions," which may be accomplished by *any* structure "capable of raising and lowering the conveyor assembly." Dkt. 51 at 9-10. A "structural support member capable of raising and lowering" is identical in scope to the rejected "means for raising and lowering." Crawford Decl., ¶ 42. The patent examiner also repeatedly rejected dependent claims directed to a "mast assembly for raising and lowering the conveyor assembly" in view of McWilliams, which discloses a rigid vertical pole to raise and lower a conveyor frame. Dkt. 52 at 14-15. "Extendible," therefore, must narrow the "mast" beyond the capability of simply "raising and lowering." *Id.* Plaintiff now attempts to recapture exactly what the Patent Office rejected.

### 4. The extrinsic evidence cited by Plaintiff either supports *CCI/JMH's* proposed construction or contradicts the intrinsic evidence

"[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1375 (Fed. Cir. 2012) (quoting *Phillips*, 415 F.3d at 1319). Because the intrinsic evidence plainly supports CCI/JMH's proposed construction, which stays true to the claim language, the teachings of the specification, and the prosecution history, Plaintiff resorts to heavy reliance on extrinsic evidence. But, the extrinsic evidence cited by Plaintiff either supports CCI/JMH's proposed

13

construction or directly contradicts the intrinsic evidence. Extrinsic evidence can only be

considered in a claim construction analysis *if it does not contradict the intrinsic evidence*.

*Phillips*, 415 F.3d at 1317.

The dictionary definitions cited by Plaintiff are improper for several reasons.[4] First,

Plaintiff fails to provide the Court with full definitions (either within the body of his brief or as

exhibits), and omits several relevant, alternate definitions unfavorable to Plaintiff's position. *See*

*Tokai Corp. v. Easton Enter.*, *Inc.,* No. EDCV 07-883-VAP, 2009 WL 1582924, at *5 (C.D. Cal.

June 2, 2009) (rejecting dictionary definitions because alternate definitions supporting opposing

party's proposed construction omitted from citation). For example, Plaintiff omits a definition of

"extend" from its cited dictionary that means "to cause to be longer." Manning Decl., ¶¶ 4-5, Ex.

FF; *see also* Ex. GG (the first definition in *Plaintiff*'s nautical reference is "vertical wooden

pole"). Plaintiff's reliance on cherry-picked dictionary definitions, many of which are definitions

of words used in *the parties' proposed constructions* rather than the actual words used in patent

claims (i.e., "support" and "vertical"), illustrates why the Federal Circuit has cautioned against

reliance on abstract dictionary definitions removed from the disclosure of the patent. "[I]t is

improper to read [a claim] term to encompass a broader definition simply because it may be

found in a dictionary, treatise, or other extrinsic source." *Nystrom v. TREX Co., Inc.*, 424 F.3d

1136, 1145 (Fed. Cir. 2005).

These definitions should also be disregarded for another important reason—the

definitions are from 2018, *not* from the time of filing of the patent application, and therefore do

not shed any light on the meaning of the claim term to a PHOSITA *in 2005*. *See Phillips*, 415

F.3d at 1313 (the ordinary and customary meaning of a claim term is the meaning the term would

---

[4] The definitions cited by Plaintiff have never been produced in discovery despite requests
specifically seeking such documents. Manning Decl., ¶ 6.

have to a PHOSITA "*at the time of the invention* …" (emphasis added)).

Plaintiff erroneously argues that "CCI's arguments relating to the term 'extendible mast' center largely around unrelated, nautical applications of mast." Dkt. 51 at 9. Nothing could be further from the truth. In fact, it is *Plaintiff* who cites a nautical dictionary. *Id.* Relying on the testimony of Dr. Crawford, CCI/JMH explains that "'mast' is most frequently used to refer to vertically oriented members that carry ship sails," but that "it is generally understood to mean a vertical pole or similar structure, which may also serve as a support structure." Dkt. 52 at 12. CCI/JMH also provided several *complete* general and technical dictionary definitions that consistently define "mast" as a "vertical pole" or "upright post," which is consistent with the intrinsic evidence. *Id.* at 15; Exs. U-EE. And, another reference produced by CCI/JMH shows that "mast" is commonly used to refer to vertical pole-like structures in several types of machines, including forklift trucks, hydraulic pallet trucks, and tower cranes. Manning Decl., ¶ 7, Ex. HH.

Plaintiff also cites to two unrelated patents using the term "mast" in various forms. Unrelated prior art merits little weight in a claim construction analysis as "it was not 'created by the patentee in attempting to explain and obtain the patent.'" *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2007) (quoting *Phillips*, 415 F.3d at 1317). Nevertheless, these patents actually support *CCI/JMH's* proposed constructions—*both* patents use the term "mast" consistent with its plain and ordinary meaning as understood by a PHOSITA.

Plaintiff points to U.S. Patent No. 4,127,070 (the "'070 patent") for his argument that a "mast" as understood by a PHOSITA "does not have to be vertical" based on a description of "a mast … shown generally at 90 on a superstructure 92 on top of the frame and is bent



or disposed to one side with a pivot 94 …" Dkt. 51 at 8. While the probative value of the '070

patent is questionable, it nevertheless indicates that a "mast" is understood to mean a vertically-

oriented structure. If "mast" is not commonly understood to have a generally vertical orientation,

then there would be no reason for the '070 patent to qualify that mast 90 is "bent or disposed to

one side." And, as the '070 patent's figures indicate, the mast is generally upright. Dkt. 51-3,

Ex. C. This is consistent with Dr. Crawford's opinions—a "mast" may pivot to perform its

intended function and it need not be at a precisely 90 degree angle to the horizontal plane to be

considered a "mast" as long as it is generally vertical. Crawford Decl., ¶ 31. Further, the '070

patent refers to the *horizontally-oriented* elongate structure 96 as a "boom" (Dkt. 51-3, 4:18-30),

consistent with its commonly understood meaning to a PHOSITA. Crawford Decl., ¶ 31.

Similarly, Plaintiff directs the Court to unrelated U.S. Patent No. 7,384,233 (the "'233 patent") in support of his argument that a "mast" can be "non-vertical." The '233 patent describes "lifting unit [] carried by the chassis via a ***mast-like beam*** (12), that is pivotably connected to the chassis about a substantially horizontal axis." Dkt. 51



at 12 (emphasis added). The term "beam" is commonly understood to refer to an elongate

horizontal structure. Crawford Decl., ¶ 31. Thus, the '233 patent refers to the structure indicated

at 12, which can pivot between a vertical orientation to a horizontal orientation, as a combination

of a vertical "mast" and horizontal "beam"—a "mast-like beam."

The Court should also disregard the conclusory and unsupported opinions of Dr. Rasty,

which amount to nothing more than *ipse dixit* statements directly contradicting *both* the intrinsic

and extrinsic evidence. *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 970

16

(Fed. Cir. 2013); *see also Iovate Health Sci., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381 (Fed. Cir. 2009) (rejecting "conclusory expert testimony" in support of claim construction arguments). Dr. Rasty does not explain a PHOSITA's understanding of the ordinary meanings of any of the claim terms, points only to general dictionary definitions and unrelated patents in support of his opinions, fails to analyze the specification's description of the "extendible mast" or the prosecution history relating to that term, and bases his opinions on the same incorrect legal standards set forth above. His declaration does not provide any underlying rationale for his opinions, merely providing conclusory opinions devoid of any technical analysis. His opinions should be given little to no weight.

**B.     "the conveyor assembly includes … a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis"**

The primary dispute over this claim term is that Plaintiff's proposed construction reads out the words "for the frame" and "pivotal" ("a connection that permits angular movement of the frame relative to the chassis"), whereas CCI/JMH's proposed construction gives those words meaning consistent with the intrinsic evidence ("the conveyor assembly frame includes a pivot that allows the angle between the conveyor assembly frame and the chassis to change").

Plaintiff incorrectly asserts that CCI/JMH's proposed construction rewrites the claim language and imports limitations from the specification into the claim by requiring "for the frame" to mean the pivotal connection is *on* the frame.[5] Dkt. 51 at 13-14. But, if the pivotal connection does not have to be on the frame, the words "for the frame" are impermissibly

_____

[5] Plaintiff also asserts CCI/JMH's proposed construction is improper because the patent never refers to the "frame" as a "conveyor assembly frame." Dkt. 51 at 14. The '629 patent refers to several different frames, including "trailer or frame 16," "frame of the stacking bin 40," and "[b]undling assembly…frame 140." Ex. A, 4:33, 8:53, 9:1-2. The "frame" referenced in this claim term is for the conveyor assembly—"the conveyor assembly include a frame"—and CCI/JMH's proposed construction clarifies the "frame" is the conveyor assembly's frame.

17

rendered superfluous because the claim term would have the same meaning if the phrase is read

out—"a pivotal connection ~~for the frame~~ to permit angular adjustment of the frame relative to the

chassis." This is not importing limitations from the specification into the claims, but rather

giving *all* of the words in the claim term meaning as required by Federal Circuit law. "[C]laims

must be 'interpreted with an eye toward giving effect to all terms in the claim.'" *Becton,*

*Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010).

     In order to ascertain the meaning of "for the frame," the specification provides

guidance—the *only* indication of the location of the pivotal connection is in the figures, which

*only* depicts it directly *on* the frame at 165. Ex. A, Figs. 2, 10A-10C, 11B. "The descriptive part

of the specification aids in ascertaining the scope and

meaning of the claims inasmuch as the words of the

claims must be based on the description." *Phillips*, 415

F.3d at 1315 (*quoting Standard Oil Co. v. Am.*

*Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).



     Plaintiff also asserts another flawed claim differentiation argument. Namely, that

dependent claim 3, which claims "the pivotal connection connects between the frame and the

stacking assembly," means claim 1 cannot have a "location-based limitation" because claims 1

and 3 would then have identical scope. Dkt. 51 at 16-17. Once again, this argument is meritless.

Claim 1 does not recite any limitations regarding the pivotal connection's location relative to the

stacking assembly. In contrast, claim 3 requires the pivotal connection to be located between the

frame and the stacking assembly, i.e., the pivotal connection must be on the end of the frame

closest to the stacking assembly. Thus, under CCI/JMH's proposed construction, claims 1 and 3

are not identical in scope and claim differentiation does not apply. *See GPNE*, 830 F.3d at 1371.

Finally, Plaintiff claims the prosecution history does not suggest any limitation on the pivotal connection's location on the frame. Dkt. 51 at 16. Plaintiff is correct in that the prosecution history is entirely silent regarding the location of the pivotal connection, but that does not lead to the conclusion that the claim language can be ignored or that a term not specifically discussed during prosecution is not a required limitation of the claim. "[C]laim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw*, 158 F.3d at 1248.

### C. "the mast includes a hydraulic cylinder drivable to telescope to various lengths"

This claim term cannot be given its plain and ordinary meaning because the parties dispute whether the "mast" or the "hydraulic cylinder" must "telescope to various lengths." Plaintiff focuses on the word "includes," replacing it with "incorporates," which does nothing to clarify this claim term. Dkt. 51 at 17-18. If anything, the definitions cited by Plaintiff *support* CCI/JMH's proposed construction that the "mast" must telescope to various lengths, because the hydraulic cylinder is *part of the mast. See* Dkt. 51 at 17 ("includes" means "to comprise as part of a whole … to contain between or within"). Plaintiff also fails to explain how a PHOSITA would understand the ordinary meaning of the claim term. In fact, Plaintiff does not even reference the specification or prosecution history regarding this claim term, but rather focuses almost entirely on extrinsic evidence.

Under Plaintiff's proposed claim construction, which it contends requires the "hydraulic cylinder" to be "drivable to telescope to various lengths," most of the claim language would be rendered redundant. Dr. Rasty asserts that "the nature and function of the piston within a hydraulic cylinder is to telescope to various lengths." Dkt. 51 at 19; Dkt. 51-5, ¶ 37. Dr. Crawford agrees—hydraulic cylinders inherently telescope to various lengths. Dkt. 52 at 19.

Accordingly, it makes no sense that the claim would explicitly require the hydraulic cylinder to function as it inherently does. Thus, under Plaintiff's claim construction, the phrase "telescope to various lengths" is redundant and meaningless. *See Becton, Dickinson*, 616 F.3d at 1257.

Furthermore, the specification only describes the "mast" as telescoping, but *not* the "hydraulic cylinders"—"[i]nner mast 166 telescopes upwardly to achieve position A in FIG. 10C." Ex. A, 10:60-61. The "mast" telescoping to various lengths is also plainly depicted in Fig. 11B. No other telescoping parts associated with the "extendible mast" or the conveyor assembly are referenced or depicted in the specification. And, the 'hydraulic cylinder" is only described as being *within the mast* "to provide a means to move the mast vertically." *Id.*, 10:50. Thus, CCI/JMH's proposed construction "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Renishaw*, 158 F.3d at 1250.

Finally, Plaintiff criticizes CCI/JMH's definition of "telescoping" as including words that do not appear anywhere in the patent, while at the same time failing to provide any explanation of its ordinary and customary meaning. The whole purpose of claim construction is to determine the meaning and scope of the patent claims, which are usually not explicitly defined in the specification. Nevertheless, the commonly understood meaning of "telescoping" is evident from dictionary definitions, which consistently define "telescoping" as requiring "overlapping sections slide in and out from one another," as proposed by CCI/JMH. For example, "telescope" is generally defined as "to cause to slide inward or outward in overlapping cylindrical sections." Manning Decl., ¶ 8, Ex. II; *see also* Manning Decl., ¶¶ 9-13, Exs. JJ-NN.

## IV.    CONCLUSION

For the foregoing reasons, the claim terms at issue should be construed consistent with Commando and JMH's proposed constructions herein.

Dated: August 10th, 2018

Respectfully submitted,

By: */s/ Rudolph A. Telscher, Jr.*
Rudolph A. Telscher, Jr.,
Missouri Bar No. 41072*
rudy.telscher@huschblackwell.com
Daisy Manning
Missouri Bar No. 62134*
daisy.manning@huschblackwell.com
Michael R. Annis
Missouri Bar No. 47374*
mike.annis@huschblackwell.com
Shannon D. Peters
Missouri Bar No. 66953*
shannon.peters@huschblackwell.com
Erin D. Knese
Missouri Bar No. 70171*
erin.knese@huschblackwell.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314-480-1500 Telephone
314-480-1505 Facsimile
*admitted *pro hac vice*

and

Albert A. Carrion
Texas State Bar No. 03883100
HUSCH BLACKWELL, LLP
111 Congress Avenue Suite 1400
Austin, Texas 78701-4093
512.703.5798 Telephone
512.479.1101 Facsimile
Albert.Carrion@huschblackwell.com

***Attorneys for Defendants/Counterclaim
Plaintiffs Commando Construction, Inc. and
James McLeod Holdings, Inc.***

21

## CERTIFICATE OF SERVICE

I certify that on this 10th day of August 2018, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Notice of Electronic Filing from the Court's Electronic Filing System upon all counsel of record.


*/s/ Rudolph A. Telscher, Jr.*

SLC-8707687-2