IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MURRAY WALTER PISONY, | § | |
| *Plaintiff,* | § | Civ. A. No. 6:17-cv-00055-RP-JCM |
| | § | |
| v. | § | |
| | § | |
| COMMANDO CONSTRUCTION, INC. and | § | JURY DEMANDED |
| JAMES MCLEOD HOLDINGS INC. | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF MURRAY WALTER PISONY'S RESPONSIVE
## CLAIM CONSTRUCTION BRIEF

John T. Wilson
State Bar No. 24008284
Jennifer M. Rynell
State Bar. No. 24033025
Leigh Caudle Whitaker
State Bar No. 24094260
16610 Dallas Parkway, Suite 1000
Dallas, Texas 75248
(T) 972.248.8080
(F) 972.248.8088
(E) eservice@wilsonlegalgroup.com

***Attorneys for Plaintiff Murray Walter
Pisony***

## <u>TABLE OF CONTENTS</u>

I.      "Extendible Mast"—A Structural Support Member Capable of Raising and Lowering.... 2

    A.      The Mast of Claim 1 is not Required to be Vertical. ..................................................... 3

    B.      The Mast Need Not "Increase in Length" to be Extendible. ........................................ 7

II.     Claim 1's "Pivotal Connection for the Frame" .................................................. 9

III.    Claim 6 Should be Afforded its Plain and Ordinary Meaning.......................................... 12

IV.     CONCLUSION .............................................................................................. 15

## TABLE OF AUTHORITIES

CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012)...... 11, 12

*Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*, No. A:17-CV-0030-LY, 2018
    WL 2770648 (W.D. Tex. June 8, 2018). .......................................................................... 3

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338 (Fed. Cir. 2014). .................................. 13

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014). ................................. 5, 10

*Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)................................... 4, 10

*Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191 (W.D. Tex.
    Dec. 1, 2017)............................................................................................................... 4, 10

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). ........................................................ 4, 10

*Summit 6 LLC v. HTC Corp.*, 7:14-CV-00014-O, 2015 WL 11117868 (N.D. Tex. Mar. 21,
    2015). ................................................................................................................... 4, 5, 10

Plaintiff, Murray Walter Pisony ("Pisony," "Plaintiff," or "Patentee"), hereby submits his Responsive Claim Construction Brief in the above-referenced matter.

Defendants Commando Construction, Inc. ("CCI") and James McLeod Holdings Inc. ("JMH") (collectively, "Defendants") cast this case as one in which "the asserted patent is straightforward and its claims normally would require little to no construction." Defs.' Opening Claim Constr. Br. 1, ECF No. 52. Plaintiff agrees that the plain and ordinary meaning of the majority of the terms in the patent should control. It is Defendants who have suggested otherwise in an attempt to avoid infringement. Indeed, CCI initially proposed eleven terms and/or long phrases for construction on April 30, 2018, including simple terms such as "chassis" and very long phrases such as "the mast being operable to drive adjustment of the angle of the frame relative to the chassis." *See* Wilson Decl. Ex. A, at 2, CCI's Identification of Proposed Claim Terms and Phrases for Construction. Accordingly, Plaintiff prepared proposed constructions and identifications of intrinsic and extrinsic evidence in great detail as to each of these terms and phrases. Three weeks later, on the Friday before proposed constructions and identifications of evidence were due to be exchanged, CCI notified Plaintiff that it was withdrawing *six* of its eleven claim terms and phrases. *See* Wilson Decl. Ex. B, at 1, Email from Daisy Manning to counsel for Plaintiff (May 18, 2018, 15:33 CST). Two weeks after that, at the conference of counsel before the filing of the Joint Claim Construction Statement and after Plaintiff had done significant additional work, CCI notified Plaintiff that it was again dropping half of the remaining claim terms and phrases it initially asserted required construction. Wilson Decl. ¶ 5. Only three of the original eleven terms and/or phrases asserted by CCI for construction remain before the Court, two of which Plaintiff and its expert believe can be readily understood and require no construction. The third term, "extendible mast," requires construction because Defendants seek to improperly limit

this phrase to a vertical pole.[1]

Further, there is familial and litigation history between Plaintiff and James McLeod, his estranged brother-in-law who is President of CCI and sole shareholder of JMH. Those issues, however, are not relevant to this case. Plaintiff believes that the parties should remain focused on the merits of the patent infringement dispute at hand so as to conserve the Court's time and resources and avoid unnecessary costs and fees in responding to the inaccurate and misleading characterizations made by Defendants about these past events.

I.   **"Extendible Mast"—A Structural Support Member Capable of Raising and Lowering.**

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "extendible mast" | Claim 1 | "a structural support member capable of raising and lowering" | "a vertical pole or similar structure that can increase in length" |

Despite Defendants' suggestion, Plaintiff's construction does not read out either term of the phrase "extendible mast." A mast is a "structural support member" and Defendants' own construction proposes "structure" as a possible substitute for "pole." *See* Defs.' Opening Claim Constr. Br. 11, ECF No. 52. Defendants' opening brief even goes on to state that a "mast" . . . "is generally understood to mean a . . . structure, which may also serve as a support structure." *Id*. at 12. Defendants' expert, Richard Crawford, agrees. *See* Crawford Decl. ¶ 29, ECF No. 52-1. Defendants also do not appear to dispute that the suffix "-ible" of the word "extendible" means "capable of." *See id*. at 11 ("'extendible mast' means . . . structure ***that may*** increase in length.")

---

[1] In the process of making these arguments, Defendants also attempt to cast aspersions on Plaintiff and the history of Plaintiff's infringement contentions in this regard. The truth is that Plaintiff made one and only one amendment to his Preliminary Infringement Contentions after receiving access to "discovery of nonpublic information about the Accused Instrumentality." *See* Scheduling Order at 2. ECF 32. These amended claim charts that contained minor modifications were made four business days after Defendants provided Plaintiff access to inspection of two of the four Accused Machines and this modification in no way prejudiced or affected Defendants' claim construction positions. Though Defendants claim, without authority, that these contentions were made in violation of the Scheduling Order, nothing in the Order requires permission of the opposing party or leave of Court for such amendment.

(emphasis added). Based on the foregoing, the following portion of Plaintiff's construction is essentially ***agreed to***: "a structural support member capable of . . . ." The only real dispute is whether that support structure has to be vertical and whether it has to increase in length in order to be extendible. The answer to both inquiries is overwhelmingly no.[2]  Federal Circuit law dictates this result.

### A.      The Mast of Claim 1 is not Required to be Vertical.

Defendants seek to limit the mast of Claim 1 to a vertical pole when nothing in the patent claims, specification, or prosecution history permits this interpretation.

The claim language is of paramount importance. "Claim language guides the court's construction of claim terms. . . . Differences among claims, such as additional limitations in dependent claims, can provide further guidance." *Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*, No. A:17-CV-0030-LY, 2018 WL 2770648, at *2 (W.D. Tex. June 8, 2018) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)). The claim language is critical here, as it demonstrates that Defendants' proposed claim construction is impermissible. The vertical mast that Defendants seek to import into Claim 1 is actually found in dependent Claim 7, which states:

> The apparatus of claim 1 wherein the mast includes an inner mast and an outer mast, ***the inner mast being mounted to the chassis to extend substantially perpendicularly upwardly therefrom***, the outer mast being pivotally connected to the inner mast and being pivotally connected to the frame, at least one of the inner mast and the outer mast having an adjustable length to move the frame to a selected height relative to the chassis to select the spacing therebetween.

Pl.'s Opening Claim Constr. Br. Ex. A, '629 Patent, Claim 7, ECF No. 51-1 (emphasis added). It

---

[2] Plaintiff hereby incorporates fully herein by reference his Opening Claim Construction Brief and exhibits as well as the accompanying Declaration of Dr. Jahan Rasty. *See* ECF No. 51 *et seq.*

is noteworthy that Defendants never once mention or call the Court's attention to Claim 7. In fact, this is the only claim language that in any way relates to a directional limitation or orientation of the mast. This is precisely why the Court must not adopt Defendants' proposed construction. The doctrine of claim differentiation cannot be overlooked in this instance because that is where Defendants' vertical mast can be found, not in Claim 1. It is well established that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314–15 (citing *Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004)). "[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." *Liebel-Flarsheim*, 358 F.3d at 910. The claims themselves show that the "extendible mast" of Claim 1 is not required to be vertical and Defendants cannot overcome this presumption.

The directional limitation that Defendants seek to add to Claim 1 is also in direct violation of the black letter claim construction principle that courts should not "read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *9 (W.D. Tex. Dec. 1, 2017) (citing *Epos Techs. v. Pegasus Techs*, 766 F.3d 1338, 1341 (Fed. Cir. 2014). In *Summit 6 LLC v. HTC Corp.*, 7:14-CV-00014-O, 2015 WL 11117868 (N.D. Tex. Mar. 21, 2015), the Federal Circuit made clear that "[d]istrict courts are instructed to 'not read limitations from the embodiments in the specification into the claims.'" *Id.* at *7–8 (citing *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014)). "The fact that a patent describes 'only a single embodiment' does not require the invention to be limited to that

embodiment." *Id.* "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Hill-Rom Servs.*, 755 F.3d at 1371 (quoting *Liebel-Flarsheim*, 358 F.3d at 906). Defendants' repeated complaint that the figures of the '629 Patent show only a vertical mast are unavailing, as there are no "words or expressions of manifest exclusion or restriction" limiting the extendible mast to a vertical pole. Defendants have not and cannot now make or support any such allegation. To the contrary, the intrinsic record shows that there was no intent to limit the "extendible mast" to a vertical pole. In the prosecution history, for example, the Patentee described the extendible mast as "***a driver that can be driven*** to pivot the frame of the conveyor assembly relative to the chassis of the apparatus." *See* Pl.'s Opening Claim Constr. Br. Ex. B, Certified Prosecution History at PISONY003425-003426, ECF No. 51-2 (emphasis added). The Patentee went on to describe the extendible mast's "ability to drive the angular adjustment of the conveyor assembly [which] allows the apparatus to continue efficient operation even on severely inclined terrain." *Id.* There is no limit on or even discussion of any specific orientation of the extendible mast in this intrinsic evidence. And the examiner cited this language, in part, as a basis for allowing what issued as Claim 1 of the '629 Patent. *See id.* at PISONY003435-003436. Plaintiff has shown the Court a non-vertical mast in the intrinsic record that was cited in the prosecution history. *See, e.g.,* Pl.'s Opening Claim Constr. Br. Ex. C, U.S. Patent No. 4,127,070 col. 4 ll. 18-20 (emphasis added) and fig. 3, ECF No. 51-3. In light of the intrinsic evidence and Defendants' complete lack of any showing to the contrary, the Court must not now limit the "extendible mast" of Claim 1 in the manner proposed by Defendants.

Finally, Defendants resort to arguments stemming from a continuation application that was filed by Plaintiff and later abandoned. The prosecution history of the so-called '740 continuation application is at best extrinsic evidence and it is not relevant to the analysis of the meaning of the term "extendible mast." Defendants imply that statements made by the examiner in the context of the '740 continuation application should have some bearing on the "extendible mast" of the already-issued '629 Patent. This is very disingenuous, as the phrase "extendible mast" and its further description in Claim 1 of the '629 Patent *appear nowhere* in the claims or prosecution history of the '740 continuation application. *See* Wilson Decl. Ex. C, File Wrapper of United States Patent Application No. 12/539,740. Contrary to Defendants' suggestion, the examiner could not have been commenting on the extendible nature of the '629 Patent's mast in the context of the '740 continuation application because there was no "extendible mast" in the claims before the examiner in that application. Further, Defendants continue to highlight the McWilliams patent cited in the '740 application prosecution history in what is basically an invalidity sideshow in this claim construction context. But the McWilliams patent did not once use the term "mast." *See* ECF 52-20. Defendants' Opening Claim Construction Brief also expressly states that McWilliams "shows a vertical pole-like structure that raises and lowers a conveyor assembly *to adjust the approach angle* . . . ." *See* Defs.' Opening Claim Constr. Br. 15, ECF No. 52 (emphasis added). This is demonstrably false and is nothing more than a self-serving characterization by Defendants. McWilliams makes no mention whatsoever of adjusting the approach angle, as Defendants' brief suggests with its citation to the Manning Declaration and the entirety of the McWilliams patent. There are numerous other significant bases to differentiate McWilliams from the patent-in-suit from an invalidity standpoint, none of which are relevant here.

As shown above, nothing in the claims, specification, or prosecution history permits the interpretation that the "extendible mast" of Claim 1 is limited to a vertical pole.

### B.   The Mast Need Not "Increase in Length" to be Extendible.

Defendants seek to add a limitation found nowhere in the language of Claim 1—specifically, that the mast "increase in length." Plaintiff's construction, on the other hand, ties directly back to the language of the specification and how the mast is described as being capable of performing its intended and claimed purposes—i.e., being capable of raising and lowering. The correct approach is clear. Plaintiff asks that the Court adopt its proposed construction, which comports with purpose of the extendible mast in Claim 1, the usage of the word "extend" in the patent, and the common understanding of the term in the English language.

Defendants primarily argue that "*extendible* mast" cannot be construed as "capable of raising and lowering" because one of the original claims of "a mast assembly for raising and lowering the conveyor assembly" was rejected by the examiner. But Defendants completely ignore the further description of the "extendible mast" in Claim 1 and the fact that claim 26 in the prosecution history (that became Claim 1 in the issued '629 Patent) never received any rejection whatsoever from the patent examiner, likely because of the detail in which the purpose of the "extendible mast" is described. The "extendible mast" of Claim 1 must "connect[] between the frame and the chassis to drive the frame about the pivotal connection" and "be[] operable to drive adjustment of the angle of the frame relative to the chassis to select the approach angle for the conveyor assembly relative to the stacking assembly." Pl.'s Opening Claim Constr. Br. Ex. A, '629 Patent, Claim 1, ECF No. 51-1. In allowing this claim to issue, the examiner cited the arguments of Patentee's counsel, which described the "extendible mast" as "***a driver that can be driven*** to pivot the frame of the conveyor assembly relative to the chassis of the apparatus." *See id.* Ex. B, Certified Prosecution History at PISONY003425-003426, ECF No. 51-2 (emphasis added). This

refers to the requirement in Claim 1 that the extendible mast be able to "drive the frame" and "drive adjustment of the angle." *Id.* Ex. A, '629 Patent, Claim 1, ECF No. 51-1. The examiner also allowed the claim based, in part, on Paragraph 85 of the patent specification which states: "The apparatus may also comprise a mast assembly 164, ***to raise and lower*** the conveyor assembly 18, to accommodate for the slope of the land on which the apparatus is being used." *Id.* Ex. B, Certified Prosecution History at PISONY003261, ECF No. 51-2 (emphasis added). The ability to raise and lower the conveyor assembly is what makes the mast extendible and what permits it to accomplish the additional limitations described in Claim 1. Plaintiff seeks no more than is claimed, and the construction Plaintiff proposes comes directly from the specification. Defendants' interpretation of the "extendible mast," on the other hand, is unreasonably narrow in an effort to avoid infringement. Oddly, in a paragraph of his declaration ***not cited or argued*** in Defendants' brief, Defendants' technical expert actually agrees with Plaintiff's construction of the extendible nature of the mast:

> Additionally 'raising and lowering' is already accounted for in the remainder claim 1 of the '629 patent. For example, the 'extendible mast connected between the frame and the chassis to drive the frame about the pivotal connection," and "the mast being operable to drive adjustment of the angle of the frame relative to the chassis," means the 'extendible mast' necessarily raises and lowers the conveyor frame.

Crawford Decl. ¶ 43, ECF No. 52-1. This supports Plaintiff's proposed construction, as without the word "extendible" in the claims, it begs the question: How does the mast drive the frame about the pivotal connection?, and how is the mast operable to drive the adjustment of the angle of the frame relative to the chassis? The answer is that the mast is extendible, i.e., it is capable of raising and lowering as discussed in the specification. Any implication that "extendible" has to mean

something more than raising and lowering and especially something as narrow and arbitrary as "increas[ing] in length" is wrong and wholly unsupported.

In light of the foregoing, the Court should adopt Plaintiff's construction of "extendible mast": "a structural support member capable of raising and lowering."

## II.    Claim 1's "Pivotal Connection for the Frame"

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "the conveyor assembly includes … *a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis*" | Claim 1 | Plain and ordinary meaning.<br><br>In the alternative only, Plaintiff contends that this phrase should be accorded the meaning that would have been understood by one of ordinary skill in the art at the time of the invention, which is: "a connection that permits angular movement of the frame relative to the chassis" | "the conveyor assembly frame includes a pivot that allows the angle between the conveyor assembly frame and the chassis to change" |

Defendants again seek to modify the claim language of the '629 Patent in an attempt to avoid infringement and in express violation of the law of this district and the Federal Circuit.

Defendants' arguments center on the location of the pivotal connection in Claim 1, contending that it must be located **on** the "conveyor assembly frame." *See* Defs.' Opening Claim Constr. Br. 16-17, ECF No. 52. Defendants repeatedly refer to this "conveyor assembly frame" with citations to the '629 Patent as if it was actually mentioned therein. To be clear, the phrase "conveyor assembly frame" is never used anywhere in the patent. As explained in Plaintiff's Opening Claim Construction Brief, Defendants seek to place the pivotal connection **on** the frame when the express language of the claim only requires that the pivotal connection be "**for** the frame to permit angular adjustment **of** the frame relative to the chassis." Pl.'s Opening Claim Constr. Br. Ex. A, '629 Patent, Claim 7, ECF No. 51-1 (emphasis added).

Defendants misleadingly suggest that column 10, lines 40-42, is the "only place in the specification that mentions a pivotal connection for the conveyor assembly." Defs.' Opening Claim Constr. Br. 16-17, ECF No. 52. More importantly than the specification, *the claims themselves* contain another mention of a pivotal connection for the conveyor assembly that Defendants completely ignore because it pulls the rug out from underneath their argument. Claim 3 states that the pivotal connection of Claim 1 "connects between the frame and the stacking bin." Pl.'s Opening Claim Constr. Br. Ex. A, '629 Patent, Claim 3, ECF No. 51-1 This is the exact location where Defendants ask the Court to place the pivotal connection of Claim 1. The Court must decline to do so based on the doctrine of claim differentiation, the strong presumption set forth by the Federal Circuit in such an instance as this, and the fact that Defendants have no evidence to overcome it. *See Phillips*, 415 F.3d at 1314–15; *Liebel–Flarsheim,* 358 F.3d at 910.

In one last-ditch effort to limit the location of the pivotal connection of Claim 1, Defendants point to the embodiment shown in the specification and allege that it has to be located there. This argument fails for the same legal reason as the direction-based limitation Defendants previously sought to apply to the extendible mast. Even if there is only one embodiment shown in the specification, there is no "clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Meetrix IP*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *9 (citing *Epos Techs.*, 766 F.3d at 1341); *see also Summit 6 LLC*, 7:14-CV-00014-O, 2015 WL 11117868, at *7– 8; *Hill-Rom Servs.*, 755 F.3d at 1371. And there certainly is no evidence of "a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Hill-Rom Servs.*, 755 F.3d at 1371 (quoting *Liebel-Flarsheim Co.*, 358 F.3d at 906). Accordingly, Defendants' attempt to limit this phrase to an embodiment shown in the '629 Patent must fail as they have made no attempt whatsoever to meet the requirements of Federal Circuit precedent.

Defendants also have no technical expert declaration in support of their proposed construction as to this phrase.

In the alternative only, Plaintiff has submitted a proposed construction that comports with the language of the claims. *See* Rasty Decl. ¶¶ 31, ECF No. 51-5. Defendants cannot disagree that the purpose of the pivotal connection is to permit angular adjustment/movement of the frame relative to the chassis. Defendants also likely do not dispute that the Accused Machines have a pivotal connection that performs said angular adjustment of the frame relative to the chassis. Their sole dispute appears to be the location of the pivotal connection and that is their chief complaint with Plaintiff's proposed, alternative-only construction.

As stated in Plaintiff's opening brief, Plaintiff does not believe any construction is necessary and that, as confirmed by Plaintiff's technical expert, this phrase is readily understandable by one skilled in the art. *See* Rasty Decl. ¶¶ 28-30, 32, ECF No. 51-5. This Court need not substitute words for those that are already clear just because Defendants have requested that the phrase be construed. Defendants cite *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008), for the proposition that this Court must construe the terms and phrases they propose for construction because there is a dispute. That is incorrect. In *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012), decided after *O2 Micro,* the Federal Circuit held that the district court did not err in giving the long phrases proposed for construction their plain and ordinary meanings.[3] In that case, as here, the proposed construction "erroneously read[] limitations into the claims" and the "district court properly rejected that construction and resolved the dispute between the parties." *Id.* at 1326 (citing *O2 Micro,* 521 F.3d

---

[3] In *ActiveVideo*, the long phrases that ActiveVideo proposed for construction in one of Verizon's patents were: "superimposing the first indication over the display of the first anchor channel" and "including with the first indication a second indication." *ActiveVideo*, 694 F.3d at 1325.

at 1363). The Federal Circuit stated that "[i]t was up to the jury to determine from the evidence presented at trial whether the [system at issue] satisfied the plain and ordinary meaning of the [claim] limitations." *Id.* Likewise, the Court should decline to impose alternate meaning on terms that are already clear and readily understandable and should find that the plain and ordinary meaning controls for the phrase: "a pivotal connection for the frame to permit angular adjustment of the frame relative to the chassis."

### III.     Claim 6 Should be Afforded its Plain and Ordinary Meaning

| Claim term, phrase or clause | Claim number | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "mast includes a hydraulic cylinder drivable to telescope to various lengths" | Claim 6 | Plain and ordinary meaning.<br><br>In the alternative only, Plaintiff contends that this phrase should be accorded the meaning that would have been understood by one of ordinary skill in the art at the time of the invention, which is: "mast incorporates a hydraulic cylinder drivable to telescope to various lengths." | "a hydraulic cylinder within the extendable mast causes the extendable mast to vary in length in a telescoping manner (i.e., overlapping sections slide in and out from one another)" |

As with the prior claim term, Plaintiff asserts that plain and ordinary meaning should govern Claim 6 and that the words of the claim are readily understandable. *See* Rasty Decl. ¶¶ 33-34, 37, ECF No. 51-5. This is not an *O2 Micro* situation, as Defendants suggest, where these simple terms and concepts that can be easily understood should be forced into a contrived claim construction that Defendants have obviously concocted to avoid infringement. Defendants' proposed construction takes a phrase that contains eleven words and uses ***twenty-nine words*** to try to explain it. The Federal Circuit has opined that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the

end, the correct construction." *Epos Techs.*, 766 F.3d at 1341 (citing *Phillips*, 415 F.3d at 1316). It is abundantly clear that Defendants' construction of Claim 6 is improper because it strains logic, distorts grammar, and entirely seeks to rewrite the claim language.

Defendants' argument is essentially that because they assert the extendible mast in Claim 1 is required to be a vertical pole, Claim 6 must be limited to a vertical pole with two nested segments and a hydraulic cylinder inside it. The Court must carefully navigate Defendants' arguments as to this and other claim terms, as Defendants mischaracterize the '629 Patent in important respects. Defendants claim that "'the mast' as provided in claim 1 (from which claim 6 depends) is required to be 'extendible,' i.e., able to increase in length along its longitudinal axis." Defs.' Opening Claim Constr. Br. 18, ECF No. 52. Defendants go on to cite Claim 1 of the '629 Patent for this proposition. This is a completely false and misleading citation. The '629 Patent does not contain the words "increase in length" or "longitudinal axis." Defendants also imply that the reference in the specification to "'a hydraulic cylinder' used in relation to the 'mast'" "disposed therein," means that the hydraulic cylinder in Claim 6 has to be inside the mast. *See id.* This is incorrect. First, a review of the portion of the specification cited by Defendants shows that the reference is actually to an inner and outer mast, not just a "mast" as stated repeatedly in Defendants' opening brief. *See id.* Further, this is a description of ***one embodiment*** in the specification and not Claim 1's "extendible mast," as it has no such requirement or limitation of an inner and outer mast. Based on the significant Federal Circuit authority to the contrary, the Court should decline to limit the claims to one embodiment described in the specification.

Defendants' attempt to require the hydraulic cylinder to be inside the mast also fails. The word "includes" cannot properly be limited to or construed as "inside," i.e. "a hydraulic cylinder within the extendible mast," as Defendants' construction suggests. Importantly, Plaintiff and

James McLeod's prior, joint patent described a "hitch 23 [that] includes a cylinder 112 . . . ." Pl.'s Opening Claim Constr. Br. Ex. B, Canadian '046 Patent at p. 24, ll. 17-18, PISONY003353, ECF No. 51-2.



*Id.* at fig.6, PISONY003369 (arrows to hitch 23 and cylinder 112 added). As shown in Figure 6 above, the hydraulic cylinder is not *inside* the hitch, but the hitch *includes* the cylinder, as Defendants (through their President and/or sole shareholder) agreed in Plaintiff's and James McLeod's prior joint patent. Defendants cannot now legitimately argue that the proper construction of "includes" means that the hydraulic cylinder has to be inside the mast.

Defendants' construction is also impermissible because it seeks to add words and phrases that appear nowhere in the patent claims or specification. Defendants' proposed limitation that the mast has to "vary in length in a telescoping manner (i.e., overlapping sections slide in and out from one another)" has no support in the claims, specification, or prosecution history. The words

"overlapping," "overlap," and "slide" simply do not appear in the prosecution history or in the '629 Patent itself with regard to the mast.[4]

Claim 6 is a straightforward claim. It describes the extendible mast of Claim 1, which also includes a hydraulic cylinder. By its express terms and according to a clear, grammatically correct reading of the English language, that hydraulic cylinder is driveable and telescopes to various lengths. And that hydraulic cylinder is the means by which the mast is extended. There are a number of ways that the mast of Claim 1 could be extended. In Claim 6, that is accomplished by a hydraulic cylinder. In fact, Defendants **agree** with Plaintiff and the exact language of the claim that the *hydraulic cylinder* is telescoping and that the word "drivable" modifies hydraulic cylinder. *See* Defs.' Opening Claim Constr. Br. 18, ECF No. 52.

The Court should adopt the plain and ordinary meaning of Claim 6 and, in the alternative only, Plaintiff's proposed construction, which substitutes the synonym "incorporates" for the word "includes" in Claim 6. *See* Rasty Decl. ¶¶ 35-36, ECF No. 51-5.

## IV.    CONCLUSION

For the reasons stated herein and in Plaintiff's Opening Claim Construction Brief and accompanying materials, Plaintiff respectfully requests that the Court adopt Plaintiff's construction of "extendible mast" and adopt the plain and ordinary meaning of the remaining two phrases proposed by Defendants for construction.

---

[4] Defendants also incorrectly state that "the term 'telescoping' only appears once in the specification, and is directed to how the "mast" can vary in length . . ." The word "telescoping" does appear only once in the '629 Patent, in the specification, but it appears in the context of the adjustable panels of the unscrambling hopper and has nothing to do with the mast. The word "telescope" appears in the language of Claim 6 and the word "telescopes" appears in reference to the inner mast in one embodiment described in the specification. Pl.'s Opening Claim Constr. Br. Ex. A, '629 Patent, col. 10 ll 60-61, ECF No. 51-1.

**DATED**: August 10, 2018                    Respectfully submitted,

                                                      **WILSON LEGAL GROUP P.C.**

                                                      By:   */s/ John T. Wilson*
                                                            John T. Wilson
                                                            State Bar No. 24008284
                                                            Jennifer M. Rynell
                                                            State Bar. No. 24033025
                                                            Leigh Caudle Whitaker
                                                            State Bar No. 24094260
                                                            16610 Dallas Parkway, Suite 1000
                                                            Dallas, Texas 75248
                                                            (T) 972.248.8080
                                                            (F) 972.248.8088
                                                            (E) eservice@wilsonlegalgroup.com

                                                      *Attorneys for Plaintiff*
                                                      *Murray Walter Pisony*


<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on August 10, 2018, the foregoing was electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

                                                      */s/ John T. Wilson*
                                                      John T. Wilson