**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| MURRAY WALTER PISONY,<br><br>    *Plaintiff,*<br><br>v.<br><br>COMMANDO CONSTRUCTION, INC.<br>and JAMES MCLEOD HOLDINGS, INC.,<br><br>    *Defendants.* | Case No.: 6:17-cv-00055-ADA |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE
<u>EXPERT INVALIDITY REPORT OF DAVID G. SMITH</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i
TABLE OF AUTHORITIES ...................................................................................................... ii
BACKGROUND ......................................................................................................................... 1
ARGUMENT ............................................................................................................................... 3
    I.     The Invalidity Contentions Appropriately Disclosed Each Anticipation and Obviousness Contention Advanced in the Smith Report ........................................ 3
    II.    Striking the Smith Report Would Not Be An Appropriate Remedy Even If the Invalidity Contentions Were Inadequate ................................................................. 7
CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **Cases**

*Anascape Ltd. v. Microsoft Corp.*,
  No. 9:06-cv-158. 2008 WL 7180756 (E.D. Tex. Mar 1, 2008) .................................................. 5

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*,
  No. C04-5385, 2007 WL 951818 (N.D. Cal. Mar. 28, 2007) ................................................ 4, 5

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-cv-1015, 2017 WL 2267283 (E.D. Tex. May 24, 2017) .......................................... 9

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
  No. 12-1971, 2014 WL 1653131 (N.D. Cal. April 24, 2014) ................................................ 3, 7

*Fenner Investments, Ltd. v. Hewlett-Packard Co.*,
  No. 6:08-cv-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ................................................ 8

*Hahn v. United Fire & Cas. Co.*,
  No. 15-cv-218, 2016 WL 10570956 (W.D. Tex. April 22, 2016) ........................................... 10

*Idaho Potato Comm'n v. M&M Produce Farm & Sales*,
  335 F.3d 130 (2d Cir. 2003) .................................................................................................... 10

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
  No. 2:12-cv-525, 2015 WL 846012 (E.D. Va. Feb. 25, 2015) .................................................. 8

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  No. 14-cv-876, 2018 WL 3646842 (N.D. Cal. Aug. 1, 2018) ................................................... 9

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969) ................................................................................................................ 10

*Nortek Air Solutions, LLC v. Energy Lab Corp.*,
  No. 14-cv-2919, 2016 WL 3856250 (N.D. Cal. July 15, 2016) ........................................... 8, 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................. 8

*Ultravision Techs., LLC v. Lamar Advertising Co.*,
  No. 2:16-cv-374, 2017 WL 3836139 (E.D. Tex. April 18, 2017) ............................................. 4

*Verinata Health, Inc. v. Sequenom, Inc.*,
  No. 12-865, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ...................................................... 8

For the reasons stated below, the Court should deny Plaintiff's Motion to Strike the Expert Invalidity Report of David G. Smith, ECF No. 81.

## BACKGROUND

On April 9, 2018, Defendants served their Invalidity Contentions ("ICs") on Plaintiff. ECF No. 81-2. The ICs identified one prior-art reference—Canadian Patent Application 2315046 (the "'046 Patent" or "McLeod/Pisony")—that Defendants contend anticipates the asserted patent under § 102(b). *Id.* at 11.[1] The ICs also identified eleven specific prior-art combinations that render the claimed invention obvious under § 103. *Id.* at 11-14. For both the anticipating reference and each obviousness combination, the ICs provided a limitation-by-limitation claim chart identifying the specific portions of the relevant prior art that discloses each limitation of the asserted claims. *Id.* at 38-301. Below is a representative excerpt of those claim charts:

| (d)) a stacking assembly operatively connected adjacent the conveyor assembly, the stacking assembly including an unscrambling hopper, a row conveyor, a stacking bin and a bundling assembly, and, | "At the rear of the conveyer 15 is provided a stacking assembly 14 generally indicated at 17 including an unscrambling hopper 18, a row conveyer 19 and a stacking assembly 20. The apparatus further including a bundling assembly 21 including a discharge ramp 22." '202 patent, 4:47-52. The elements provided by the picking and conveyer assembly 14, the stacking assembly 17 and the bundling assembly 21 are all mounted on a frame for common movement with the vehicle 10 in the working direction 13. McLeod/Pisony, p. 11, ll. 19-25. |

 

---

[1] For clarity and consistency, all citations of page numbers reflect the ECF document page number, not the internal pagination of the relevant documents.

1

*Id.* at 54-56. The ICs also described the motivations to combine for each prior-art combination. *Id.* at 15-21.

While the parties exchanged voluminous discovery correspondence in this case, not one of Plaintiff's missives raised any concerns about the adequacy of the ICs or the clarity of Defendants' invalidity positions. The parties also conferred by telephone multiple times regarding discovery disputes, and never during those calls did Plaintiff raise any concerns about the ICs or the clarity of Defendants' invalidity positions. Plaintiff also never served any discovery requests seeking clarification of Defendants' invalidity positions.

On July 31, 2019, Defendants served their Third Set of Interrogatories on Plaintiff. Martinich-Sauter Declaration, Ex. A. One of those interrogatories—Interrogatory 16—sought Plaintiff's contentions on why the prior-art combinations identified in the ICs did not render the asserted patent invalid. *Id.* at 3. On September 27, 2019, Plaintiff responded to Interrogatory 16 by asserting a series of boilerplate objections and declining to provide any substantive answer whatsoever. Martinich-Sauter Declaration, Ex. B, at 7.

After Defendants disputed the sufficiency of this response, Plaintiff ultimately agreed to supplement his answer to Interrogatory 16. On November 27, 2019—three weeks after the close of fact discovery, and nearly 20 months after Defendants served the ICs—Plaintiff served his supplemental answer to Interrogatory 16. Ex. B to Wilson Decl., filed under seal. In that answer, amid a sea of boilerplate objections, Plaintiff for the very first time claimed that the ICs were somehow insufficient. *Id.* at 8-9.[2] Even then, Plaintiff did not demand clarification or

---

[2] Plaintiff's Motion to Strike also ambiguously refers to his objections to Defendants' Requests for Admissions. *See* ECF No. 81, at 5. Those responses do not mention the ICs at all, and Plaintiff did not serve them until September 27, 2019 in any event. *See* ECF No. 81-4.

supplementation, nor did he seek to confer regarding the ICs. Instead, he blithely asserted that Defendants had already "waived their ability" to provide any detail beyond the ICs. *Id.* at 9.

On January 16, 2020, Defendants served the invalidity expert report prepared by their technical expert, David Smith (the "Smith Report"). ECF No. 81-8. Among other things, the Smith Report concludes that the '046 Patent anticipates the asserted patent and that the asserted patent is obvious in light of eight prior-art combinations. *Id.* at 37-66. Each of these prior-art combinations was expressly identified and charted in the ICs. *Compare* ECF No. 81-2, at 11-13, 28-301 *with* ECF No. 81-8, at 86-215. Just over three weeks later, Plaintiff filed his Motion to Strike, providing for the first time any substantive explanation of his purported criticisms of the ICs.

## ARGUMENT

The Court should deny the Motion to Strike. The ICs provided substantial detail regarding Defendants' invalidity positions, and, in any event, they appropriately disclosed the contentions advanced in the Smith Report, providing limitation-by-limitation claim charts for each combination discussed in the Smith Report that excerpt the text and diagrams of each reference relevant to each limitation. And even if the ICs were deficient in some limited way, striking the Smith Report would not be an appropriate remedy.

### I. The Invalidity Contentions Appropriately Disclosed Each Anticipation and Obviousness Contention Advanced in the Smith Report.

The Court should deny the Motion, because the ICs appropriately disclosed each anticipation and obviousness contention advanced in the Smith Report. "In patent litigation, expert reports are expected to provide more information than is contained in [invalidity] contentions." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. 12-1971, 2014 WL 1653131, at *5 (N.D. Cal. April 24, 2014). "The threshold question in deciding whether to strike an expert

report is, therefore, whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Id.*

The Smith Report does not add any "new" invalidity theories beyond those disclosed in the ICs. The ICs expressly disclose each prior-art combination discussed in the Smith Report. *Compare* ECF No. 81-2, at 11-13, 28-301, *with* ECF No. 81-8, at 86-215. Plaintiff does not dispute this fact. Moreover, for each of these combinations, the ICs provide a limitation-by-limitation claim chart that excerpts the *specific text and diagrams* from the prior-art references that Defendants contend to disclose each limitation. ECF No. 81-2, at 28-301. Courts generally find that invalidity contentions "provide clear notice to Plaintiff as to Defendants' invalidity theories" where "Defendants lay out specific [prior-art] combinations in their charts." *Ultravision Techs., LLC v. Lamar Advertising Co.*, No. 2:16-cv-374, 2017 WL 3836139, at *1 (E.D. Tex. April 18, 2017).

For example, in *Avago Technologies v. Elan Microelectronics*, the court rejected a challenge to invalidity-contention claim charts such as the following:

| Claim Element | U.S. Patent No. 4,799,055 ("Nestler") |
|---|---|
| an arithmetic comparison mechanism coupled to the plurality of correlation values, and wherein the motion singles are not output to the computer system whenever a correlation surface described by the plurality of correlation values fails to exhibit a selected curvature. | Nestler teaches an arithmetic comparison mechanism coupled to the plurality of correlation values, and wherein the motion signals are not output to the computer system whenever a correlation surface described by the plurality of correlation values fails to exhibit a selected curvature. See, e.g., Nestler at 6:27-30. |

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-5385, 2007 WL 951818, at *3 (N.D. Cal. Mar. 28, 2007). The court held that these claim charts—which "identif[ied] specifically in each prior art reference the pages corresponding to the element of each asserted claim"—satisfied a local rule's requirement that contentions identify "where specifically in each alleged item of prior art each element of each asserted claim is found." *Id.* Defendants' ICs and the accompanying claim charts reproduce the text, diagrams, and

4

photographs of the prior-art references that disclose the elements of the asserted claims. ECF No. 81-2, at 28-301. Thus, they are *at least* as detailed as those approved in *Avago Technologies*, and they adequately disclosed the invalidity theories described in the Smith Report. Plaintiff's position, if correct, would invite a substantial volume of motions to strike.

Plaintiff does not identify any *new* invalidity theory in the Smith Report. Plaintiff principally identifies diagrams from prior-art references that appear in the Smith Report, complaining in effect that the Smith Report was the first time Defendants inserted arrows and labels into those diagrams. *See* ECF No. 81, at 7-9. The ICs reproduced ***each*** of those diagrams—and quoted relevant accompanying text—in connection with each limitation to which they relate, including the extendible-mast limitation. *See, e.g.*, ECF No. 81-2, at 39, 62, 109, 137, 223. For example, with regard to the figure from McWilliams cited by Plaintiff, the IC claim charts reproduced precisely the same figure, along with text from the reference describing "a power operated elevating mechanism 64 which operates to tilt the frame 60 about its pivotal axis 66 to raise the frame 60." *Id.* at 109. Plaintiff cites no case suggesting that Defendants were required to annotate these diagrams further in their ICs, and Defendants have found none. While the relevant discussion in the *Anascape* case is cursory,[3] it is clear that the claim chart there merely mentioned the reference at issue (Magellan) in passing without—as the ICs did here—identifying the particular passages of the reference that disclosed each limitation. *See Anascape Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7180756, at *2-3 (E.D. Tex. May 1, 2008). The ICs here provided more than appropriate notice that each of the passages and diagrams disclosed the relevant limitations of the asserted claims. *Avago Techs.*, 2007 WL 951818, at *3. Plaintiff also has the opportunity to seek further clarity when deposing Mr. Smith.

---

[3] The relevant claim charts appear to be under seal on ECF, and thus they cannot further elucidate the *Anascape* Court's holding.

Plaintiff's claims regarding the 2000 CCI Machine[4] are especially misleading. Plaintiff asserts that, in discussing the 2000 CCI Machine, the Smith Report "point[s] to *five* alleged 'extendible masts,' including hydraulic cylinders, where the Invalidity Contentions showed them as separate elements." ECF No. 81 at 6. That characterization is not accurate. The ICs identified a specific multi-part component of the 2000 Machine as the "extendible mast."




ECF No. 81-2 at 86.                                         ECF No. 81-2 at 96.



*Id.* at 87. These images clearly reflect the hydraulic cylinders. And lest there have been any confusion about whether the hydraulic cylinders were part of the mast, as shown above, the ICs use one of these same pictures to show that the 2000 Machine satisfied the element of an asserted

---

[4] The term "2000 CCI Machine" refers to a machine that was jointly built by Plaintiff and Jim McLeod, the owner of Defendants. The 2000 CCI Machine is largely a commercial embodiment of the invention disclosed in the '046 Patent.

claim requiring that "the mast *includes* a hydraulic cylinder drivable to telescope to various lengths." *Id.* at 96 (emphasis added). Clearly, if (as shown in the ICs) the mast "*includes*" the hydraulic cylinder, the cylinder is a component of the mast—precisely what the Smith Report shows.

The corresponding image from the Smith Report does *not* identify five different extendible masts on the 2000 CCI Machine, as Plaintiff asserts. Instead, it contains five arrows pointing to different parts of precisely the same component that was identified in the ICs (which had been repainted from red to yellow).



ECF 81-8, at 98. To the extent that Plaintiff complains that the Smith Report contains a different picture of the same part, "[t]hat the [Smith] report includes information outside of the [invalidity] contentions, without altering the disclosed theory of [invalidity], is to be expected." *Digital Reg*, 2014 WL 1653131, at *5. The ICs appropriately disclosed Defendants' invalidity positions.

## II. Striking the Smith Report Would Not Be An Appropriate Remedy Even If the Invalidity Contentions Were Inadequate.

Even if the Court were to find that the ICs did not adequately disclose Defendants' invalidity positions, the Court still should not strike the Smith Report. "The court may impose any '*just*' sanction for the failure to obey a scheduling order," including the Court's scheduling

7

order that imposed the requirements for the Invalidity Contentions (ECF No. 32). *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (emphasis added). Here, striking the Smith Report would be neither just nor appropriate.

First, Plaintiff has delayed nearly two years in raising any objection to the ICs, waiting to express any concerns at all until after the close of fact discovery, and waiting to provide any meaningful explanation of the alleged deficiencies until after the service of the Smith Report. Courts have consistently refused to strike expert reports under such circumstances. If Plaintiff was "unclear as to the scope of the contentions, it was [his] responsibility to work with [Defendants], informally or through motion practice, to clarify the issue." *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *3 (E.D. Tex. Feb. 26, 2010). "[I]f the claim charts caused [Plaintiff] to suffer any confusion . . ., then the proper recourse would have been for [him] to compel [Defendants] to amend [their] invalidity contentions, not for [Plaintiff] to wait until expert discovery and then move to strike the expert report." *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-865, 2014 WL 4100638, at *6 (N.D. Cal. Aug. 20, 2014) (denying motion to strike expert report); *see also, e.g.*, *Nortek Air Solutions, LLC v. Energy Lab Corp.*, No. 14-cv-2919, 2016 WL 3856250, at *1 (N.D. Cal. July 15, 2016) ("If [plaintiff] did not have adequate clarity as to the obviousness combinations asserted by [defendant], [plaintiff] could have brought a motion to compel."). Plaintiff also could have propounded an interrogatory seeking more clarification. *See Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 WL 846012, at *3 (E.D. Va. Feb. 25, 2015) (denying motion to strike expert report, and explaining that "if [the plaintiff] had required claim charts, [it] should have asked for those claim charts in discovery"). But patent litigation is not a game of "gotcha," and Plaintiff should not be rewarded for hiding his purported concerns until

8

Defendants have no opportunity to cure or address them. Indeed, the dubious motivations behind the Motion to Strike are highlighted by Plaintiff's request to strike ***the entire*** Smith Report, including sections—such as those relating to invalidity under § 112 and an invalidating offer of sale—wholly unrelated to the issues addressed in the Motion. *See* ECF No. 81-8, at 38-39, 68-75.

Second, Plaintiff has not identified any concrete prejudice resulting from the allegedly deficient disclosures. *See* ECF No. 81, at 4. Plaintiff asserts that "[t]he prejudice to Plaintiff is lack of fair notice of Defendants' theories and contentions," which allegedly were "sprung on Plaintiff with very little time to respond and after discovery has closed." *Id.* Plaintiff has known since April 2018 precisely those prior-art combinations on which Defendants rely. Plaintiff has not argued that he would have litigated this case differently or conducted discovery differently had he known the particular contents of the Smith Report earlier. *Id.* Moreover, Plaintiff's technical expert has ample opportunity to respond to the Smith Report, and the deadline for serving that rebuttal report has not even arrived yet. Many courts have found no prejudice—and thus denied motions to strike—where the complaining party's expert had an opportunity to respond to the purportedly new theories. *See, e.g.*, *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-876, 2018 WL 3646842, at *8 (N.D. Cal. Aug. 1, 2018); *Nortek Air Solutions, LLC*, 2016 WL 3856250 at *2.

Third, the information contained in the Smith Report is highly important to this case. *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015, 2017 WL 2267283, at *2 (E.D. Tex. May 24, 2017) (noting that "the importance of the . . . evidence that might be excluded" is relevant to determining whether to strike an expert report). The merits of this case will likely turn predominantly on invalidity. Striking the Smith Report would effectively preclude Defendants

from contesting that key merits issue. Courts have found that depriving the jury of evidence critical to the merits counsels against exclusion. *See, e.g.*, *Hahn v. United Fire & Cas. Co.*, No. 15-cv-218, 2016 WL 10570956, at *2 (W.D. Tex. April 22, 2016).[5]

Fourth, the public interest counsels against striking the Smith Report and effectively removing the invalidity issues from this case. Courts recognize the compelling "public interest in discovering invalid patents." *Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130, 135 (2d Cir. 2003) (discussing *Lear, Inc. v. Adkins*, 395 U.S. 653, 670-71 (1969)). This interest derives from "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear*, 395 U.S. at 670. Enforcing an invalid patent does not merely harm the defendants in a particular case. It harms consumers, who may pay a monopoly price that the plaintiff in fact has no right to extract. It harms would-be competitors, who otherwise would enter and perhaps transform the market but-for the false impression that the plaintiff's patent is valid. To be sure, this public interest does not give defendants license to ignore scheduling orders and engage in bad-faith gamesmanship. But particularly under the facts here—where Plaintiff seeks to game the system to avoid any scrutiny of his highly dubious patent, rather than engaging in good-faith discovery or meet-and-confer efforts—the Court should vindicate the public interest in ensuring that Plaintiff can "limit full and free competition" only pursuant to a valid patent.

## **CONCLUSION**

The Court should deny the Motion to Strike, ECF No. No. 81.

---

[5] Plaintiff apparently contends that the importance of the Smith Report *supports* striking the Report. *See* ECF No. 81, at 4. Tellingly, Plaintiff does not cite a single case to support that position.

Dated: February 21, 2020

Respectfully submitted,

By: */s/ Michael Martinich-Sauter*
Rudolph A. Telscher, Jr.,
Missouri Bar No. 41072*
rudy.telscher@huschblackwell.com
Daisy Manning
Missouri Bar No. 62134*
daisy.manning@huschblackwell.com
Michael R. Annis
Missouri Bar No. 47374*
mike.annis@huschblackwell.com
Shannon D. Peters
Missouri Bar No. 66953*
shannon.peters@huschblackwell.com
Michael Martinich-Sauter
Missouri Bar No. 66065*
michael.martinich-sauter@huschblackwell.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314-480-1500 Telephone
314-480-1505 Facsimile
*admitted *pro hac vice*

Albert A. Carrion
Texas State Bar No. 03883100
HUSCH BLACKWELL, LLP
111 Congress Avenue Suite 1400
Austin, Texas 78701-4093
512.703.5798 Telephone
512.479.1101 Facsimile
Albert.Carrion@huschblackwell.com

***Attorneys for Defendants/ Commando Construction, Inc. and James McLeod Holdings, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February, 2020, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Notice of Electronic Filing from the Court's Electronic Filing System upon all counsel of record.

*/s/ Michael Martinich-Sauter*

DocID: 4829-4728-1844.6